## BUTLER et al. v. AUSTIN.
### No. 4565.

Court of Appeal of Louisiana. Second
Circuit.

Nov. 3, 1933.

J. S. Pickett, of Many, for appellants.

Fraser & Carroll, of Many, for appellee.

TALIAFERRO, Judge.

The widow and heirs of Jesse Butler, deceased, prosecute this suit against defendant, L. N. Austin, to recover 50 acres of land in Sabine parish conveyed by deceased to defendant on November 18, 1931, by notarial act of sale.

It is alleged by plaintiffs that said sale is null and void, and should be so decreed, for the reasons that defendant, with intent to defraud deceased, and in bad faith, by deceptive promises and threats, obtained his signature to said instrument; that in pursuance of said fraudulent purpose and intent, defendant sought to acquire said property without consideration, and promised to pay deceased $100 in cash, and an additional $100 per year for five successive years, and promised also to pay the Federal Land Bank of New Orleans the balance due on a mortgage against said land; none of which has he complied with. It is also alleged that deceased was a feeble old negro, and mentally incompetent, unable to read, almost blind, and that he did not understand the true nature and contents of the purported act of sale of his property, and that he, because of his incompetency, did not legally and freely assent to the sale in question.

The allegations of fact contained in plaintiffs' attack against the validity of the deed from Jesse Butler to defendant are specially denied by him. He avers that this sale was consummated in good faith by him on the terms and conditions and for the consideration expressed in the authentic act evidencing same; that he became the owner of the land described therein; and that plaintiffs are precluded thereby from attacking the title vested in him by the solemn act and deed of the deceased through whom they claim.

The lower court rejected plaintiffs' demand and dismissed their suit. This appeal is prosecuted by them.

Condensed, plaintiffs' suit to annul the sale in question is based upon the charges of employing fraudulent practices to induce deceased to sign said deed, lack of consideration therefor, insanity, mental incapacity of deceased when he affixed his signature thereto.

Deceased and defendant lived one-half mile apart. Their farms adjoined. The 50 acres in dispute is adjacent to defendant's place. He and deceased had frequently discussed a sale of it, but until November 18, 1931, they had not reached an agreement. On the morning of this day, according to defendant's version of the matter, an agreement was reached between them, and they, that evening, drove over to Many, parish seat of Sabine parish, and repaired to the office of Fraser & Carroll, attorneys, to have the act of sale prepared. Mr. Carroll, acting as notary public, after securing the necessary data from the parties, drew the credit deed now under attack. That act is in regular form, and contains the usual recitals found in credit sales of real estate. On its face it discloses nothing to indicate or suggest mental deficiency on part of the grantor. The price is declared to be $500, of which $5 was paid in cash and the balance in five notes maturing annually over a period of five years, all for $100 each, except the one maturing last. Both parties signed the act, defendant signed the notes, which are in favor of deceased, and which the notary public paraphed and delivered to him. He intrusted them to defendant's keeping; saying he would call for them in two or three days, on his return from a visit to Natchitoches parish. Mr. Carroll testified that from information furnished him by both deceased

and defendant, he was enabled to determine the description of the land they, respectively, wished to sell and purchase, after all three had gone together to an abstract office and located the land on a map; that the terms of the deed were incorporated therein at the suggestion of both parties; and that deceased stated he desired the payments on the price fixed at $100 per year so that therefrom he would annually be enabled to make a crop. He did not observe anything in deceased's conduct, talk, or actions that in the least indicated that he did not realize what he was doing. Miss Nellie Addison, an employee of the Fraser Abstract Company, witnessed the deed, which was prepared at her desk, did not detect anything in the appearance, conversation, or action of deceased at that time that indicated insanity on his part, or that he was not in possession of his mental faculties. The testimony of these two witnesses is corroborated by that of defendant.

After deceased's return from the visit to friends in Natchitoches parish, he, accompanied by defendant, went to a bank in Many, and the notes were left there for deceased's account and for safe-keeping. This was five days after the deed was passed. Immediately after the sale was closed, defendant informed some members of deceased's family of the sale to him by Butler. It appears that there are four houses on this upper 50 acres, in which as many of deceased's grown children lived.

About August, 1931, Jesse Butler began to suffer mental lapses. Prior to that time he was regarded as a peaceful citizen and attentive to the needs and welfare of his family. His condition grew worse, accompanied at times by outbursts of violence, and in September his family had him placed in jail, there being no room for him then in the state's hospitals for the insane. He remained thus detained for 18 days, being released on October 6th. He lived with his family and friends thereafter until he was brought back from his visit to Natchitoches parish, mentioned above. While on this visit, he suffered complete loss of sanity and was again confined in jail until December 28th. He became sick and was released to his family on that date. He died on December 30th. No suit was filed to have him interdicted.

The physicians who examined him while in jail, each time declared him insane; that the affliction were hereditary, progressive in character, and had been growing on him for quite a while; that one so affected could, and generally would, have lucid intervals, but rarely ever improved to the extent that their normal mental condition was restored.

■ The record leaves no doubt in our minds that the mental condition and spells of insanity of Jesse Butler, before he signed the act of sale to defendant, were generally known in the community where he lived, and that defendant must have been aware of such. However, we are equally convinced that deceased, during that time, had intervals of sanity, during which he was sufficiently possessed of his mental faculties to know what he was doing and to render him competent to contract. We believe he was in such condition when he closed the sale of part of his farm to defendant.

■ Fraud is never presumed. A proponent of such, as a weapon to strike down contracts otherwise valid, is required to support the charge by evidence, clear and convincing. It is not to be imputed, without legal evidence. Civ. Code, art. 1848. It is probably true that defendant, for several years, coveted that part of deceased's farm described in the deed between them. It was possibly worth more to defendant than to any one else, besides deceased, but these facts do not prove he was actuated by fraudulent motives or resorted to fraudulent practices to acquire the land, and especially is this not true when we consider the question of the price agreed to be paid by defendant for it. The price expressed in the deed is $500. Deceased's 100-acre farm was mortgaged to the Federal Land Bank for $300. While the deed is silent on the subject, defendant admits that he knew the existence of this mortgage and agreed to pay one-half of it as a part of the purchase price of the land he bought. If he fails to do this and if he fails to pay the notes given by him to deceased, plaintiffs have their remedy in law. There is not a great deal of evidence in the record relative to the value of the property in dispute, but that which is there is to the effect that the price agreed to be paid by defendant represents all the land was worth at the time.

■ Defendant objected to the admissibility of any evidence offered to prove the insanity of deceased before, at the time of, and subsequent to the sale in question. The objection was overruled and the tendered testimony was admitted. The objection should have been sustained.

Articles of the Civil Code bearing upon the effect of contracts of persons temporarily or permanently insane, though not interdicted, having peculiar application to this case, are:

403. "After the death of a person, the validity of acts done by him can not be contested for cause of insanity, unless his interdiction was pronounced or petitioned for previous to the death of such person, except in cases in which the mental alienation manifested itself within ten days previous to the decease, or in which the proof of the want of reason results from the act itself which is contested."

1788. Par. 5. "That if the party die within thirty days after making the act or contract, the insanity may be shown by evidence, without having applied for the interdiction;

but if more than that time elapse, the insanity cannot be shown to invalidate the act or contract, unless the interdiction shall have been applied for, except in the case provided for in the following rule."

Paragraph 6. "That if an instrument or other act of a person deceased shall contain in itself evidence of insanity in the party, then it shall be declared void, although more than thirty days have elapsed between the time of making the act and the death of the party, and although no petition shall have been presented for his interdiction."

Where it appears that more than thirty days have elapsed since the insane person has executed a contract and no petition for his interdiction has been applied for within that period, and there is nothing in the contract itself to indicate a condition of insanity, and where the mental alienation manifested itself more than ten days previous to decease, the door is closed to the widow and heirs of deceased to attack such a contract because of incompetency, due to insanity, unless fraud or fraudulent practices on the part of the other party, bearing upon a material part of the contract, be alleged and proved. In this case, the allegations of fraud, etc., have not been sustained by proof. These provisions of the Code have been interpreted and held to have effect as written. Frederick Davis, Adm'r v. Greve & Wilderman et al., 32 La. Ann. 420.

In Ducasse's Heirs v. Ducasse, 120 La. 738, 45 So. 565, 567, the court, discussing this question, said:

"Next, as to the absence of consent and absence of freedom of consent: The absence of consent is said to have resulted from Ducasse's insanity and consequent inability to consent, and the absence of freedom of consent is said to have resulted from the moral coercion which the defendant exercised over him—she a masterful woman, strong in intellect and will power, while he a paralytic, physically and mentally decrepit to the point of childishness and idiocy, and helpless. Short shrift can be made of these two grounds. Article 403, Civ. Code, provides:

" 'After the death of a person, the validity of acts done by him cannot be contested because of insanity, unless his interdiction was pronounced or petitioned for previous to the death of such person, except in cases in which the mental alienation manifested itself within ten days previous to the decease, or in which the proof of the want of reason results from the act itself is contested.'

"See, also, article 1788, by which, except in the case of gratuitous acts, the action in nullity on the ground of insanity is limited to 30 days. See, also, the following cases where these legal provisions have been enforced: Aubert v. Aubert, 6 La. Ann. 104; Davis v. Greve, 32 La. Ann. 420; Succession of Smith, 12 La. Ann. 24; Chevalier v. Whatley, 12 La.

Ann. 651. The idea of the law, says Marcade, art. 507, is to punish the heirs for not having caused the insane person to be interdicted. Testaments, said this court in the Aubert Case, supra, may, after thirty days, be attacked for insanity, but 'never contracts.' 'This difference,' adds the court, 'has its source in the consideration that laws regulating the capacity to contract are in furtherance of the natural rights of man, and that all restraints upon that capacity are abridgments of his liberty.' "

And in Strong et al. v. Haynes, 152 La. 695, 94 So. 322, 323, Judge Dawkins, as the court's organ, commenting on issues very much like those involved in the case at bar, inter alia, said:

"The record discloses that the deceased signed or affixed her mark to the deed, and that the price, which was all that the land was worth at the time, was paid, and the only fraud charged or attempted to be proven was that the deceased, as the effect of a stroke of paralysis, was mentally incapable of appreciating the nature of her act, and that defendant knew it. On this point the testimony is conflicting, and seemingly about equally balanced. We do not find it necessary to go into an analysis or elaborate discussion thereof, but sufficient to say that the mental condition of the deceased was not shown to be such as to render her totally incapable of any civil act. * * *

"Considering the evidence as a whole, we think plaintiffs have failed to show a condition rendering the defendant guilty of fraud in obtaining the deed from the deceased, which on its face bears no evidence of the incapacity or insanity. She lived more than 30 days after it was executed, was never interdicted, nor was a petition filed for that purpose, and in these circumstances evidence was inadmissible to prove her alleged mental incapacity, especially in view of the want of proof of actual fraud. R. C. C., art. 1788, subd. 5."

In Succession of Dahm, 167 La. 706, 120 So. 58, attack was made on the will of deceased, and against some sales of property made by him during his lifetime, on the ground that deceased, for a number of years prior to his demise, was of unsound mind. Exception of no cause and no right of action was sustained by the district court. Disposing of plaintiff's case, the court had this to say: "The deeds attacked are regular on their face. There is no allegation that deceased was interdicted, or that his interdiction was ever petitioned for, or that any proceeding to determine his mental capacity to manage his affairs was ever instituted. This suit was brought long after the death of the deceased."

The court then quotes article 403 of the Revised Civil Code, and refers to article 1788,

subdivisions 4, 5, and 6 therein, and the case of Ducasse's Heirs v. Ducasse, supra, and other cases cited in that opinion.

The judgment appealed from is correct. It is affirmed.