The opinion of the court was delivered by
Nicholls, C. J.
Defendant moves for a dismissal of the appeal, alleging that after the rendition of the judgment appealed from, which condemned the defendant to pay costs, plaintiff and appellant voluntarily executed the judgment by causing a fi. fa. to issue for the payment of the costs. The fi. fa., which issued, was not at the instance of the plaintiff, but of the sheriff.
The appeal is maintained.
The attack made by plaintiff upon defendant’s title is based upon the claim that the note and mortgage which she executed in favor of Mrs. Stouff, were null and void, for the reason that the debt which she then recognized as being a debt due by herself to the mortgagee (that for which the note was given), was due, not by her, but by her husband — that her husband was at that time already indebted to Mrs. Stouff on past transactions, and that, in and by the act of January 20, 1874, she bound herself and her property for her husband’s debt, in violation of Art. 2398 of the Oivil Oode. That Mrs. Stouff was necessarily aware of that fact, and that third parties were placed upon their guard, as to the character of the trans *1046 action, by the certificate of the' judge, which was annexed to the act as furnishing evidence of the fact that she was then dealing in respect to her separate affairs. That this certificate was not only stale, it having been executed as far back as March 1, 1872, while the act of mortgage was passed in January, 1874, but there was a variance, both as to the amount to be borrowed and the property to be mortgaged. Plaintiff declares that she was made to execute the note through marital influence and coercion, and that by the same influence and coercion, and the representations made to her by her mother-in-law at the time, she was prevented from interposing legal obstacles to the enforcement of the mortgage upon her property. That her mother-in-law induced her to believe that the enforcement of the mortgage, and the purchase herself of the property, was necessary for the protection of the plaintiff from the vexatious pursuit of her husband’s creditors, and her inaction was based upon a reliance of the truth of that statement. The plaintiff declares the value of the property in defendant’s possession to be fifteen thousand dollars, and she avers that she is entitled to fruits and revenues at the rate of two thousand dollars per year. The prayer of her petition was that “Mrs. Catherine Stouff and William F. Weeks be cited, and that after proceedings there be judgment in favor of petitioner, decreeing that the note and mortgage * * * be decreed null and void, and that the sale of her property mortgaged, made in execution of said mortgage, be annulled and set aside; that the title of William F. Weeks be therefore annulled, and that she be decreed the lawful owner of all the property herein described, and be ordered placed in possession of the same,” etc.
Mrs. Catharine Stouff answered, admitting that she knew the nature of the debt secured by the mortgage sought to be annulled, but denying all the other allegations of the petition.
Wm. F. Weeks pleaded the general issue, and set up in defence that he was a purchaser in good faith from Mrs. Caroline Brownson; that he had been in continual possession of the property ever since his purchase: that he had made valuable improvements upon the same. He pleaded the prescription of one, two, three, five and ten years against plaintiff’s demand, and prayed in the event of plaintiff’s recovering the land that judgment be rendered in his own favor for the improvements.
The first question which plaintiff discusses is the prescription of *1047 five years under Art. 3542 of the Oivil Oode, which was invoked by the defendant. She contends that if any prescription be applicable, it is that provided for, not in Art. 3542, but in Art. 2221 of the Civil Code.
Art. 2221 of the Civil Code declares that: “In all eases in which the action of nullity or of rescission of an agreement is not limited to a shorter period by a particular law — that action may be brought within ten years. That time commences, in cases of violence only, from the day on which the violence has ceased; in case of error or deception, from the day on which either was discovered, and for acts executed by married women not authorized, from the day of the dissolution of the marriage or of the separation. With regard to acts executed by persons under interdiction, the time commences only from the day that the interdiction is taken off; and, with regard to acts executed by minors, only from the day on which they became of age.”
This article is found in the Oode, under the title of “ Conventional Obligations;” sub-title: “Of the Action of Nullity or Rescission of Agreements,” and corresponds with Art. 1304 of the Oode Napoleon.
Art. 3542 is found under the special title of “ Prescription,” and is as follows:
“The following actions are prescribed by five years:
“ That for nullity or rescission of contracts, testaments or other acts.
“ That for reduction of excessive donations.
“ That for the rescission of partitions and the guarantee of portions.
“ This prescription only commences against minors after their majority.”
It will be seen that the latter article provides a much shorter pre - scription for action of nullity and rescission than that fixed by the first.
It is obvious that there is some sweeping class of actions of nullity and rescission which it was contemplated should not be governed by the provisions of Art. 2221, but should be barred by the prescription of five years. The difficulty is in ascertaining to what actions Art. 3542 applies.
Appellant calls our attention to the case of Mulford vs. Wimbush, *1048 2 An. 443, in which this court held that an action to annul or rescind a contract on account of error, fraud or violence, was prescribed only by ten years from the day on which either was discovered, and in case of violence only from the day on which the violence ceased, and that the provisions of Art. 3507 (now Art. 3542) of the Oode, applies only to cases not included in Art. 2218 (now Art. 2221). She also refers us to State vs. Railroad Co., 34 An. 951.
She next claims that the present suit is purely a petitory action; that the note and mortgage, under which the property was sent to sale by Mrs. Caroline Brownson, were absolute nullities, as was the sale made in enforcement thereof; that there was no necessity to attack the sale or to make Mrs. Caroline Brownson, the purchaser at the sale, a party to these proceedings.
We are of the opinion that the note, mortgage and sale were not absolute nullities. In Lafitte vs. Delogny, 33 An. 665, where the precise question of the character of the nullity resulting from the mortgage by a wife of her property to secure the debt of her husband was submitted to us, we declared that it might be classed as one of those which resulted from the incapacity of the wife growing out of the relation she bears to her husband. After an examination of the whole subject, we held that the mortgage which in that case had been granted by the wife was one susceptible of being ratified after the death of her husband, and that it had, in fact, been so ratified.
The court assimilated the particular contract to which the wife was forbidden to enter into without the consent of her husband, and referring to Art. 1786, Civil Code, which declares that the unauthorized contracts made by married women, like the acts of minors, may be made valid after the marriage is dissolved either by express or implied ratification, said “that in the power of ratification thus conferred it saw no distinction made in the contracts which might be ratified, and no limitation of the power to ratify to any particular class of contracts.”
It is said that when the law declared that the wife could not bind herself for' her husband or become surety for his debts, this was to protect her against acts resulting from her dependence on her husband, and that it would not spring into life or obtain vitality unless the wife, emancipated from marital authority, and restored to her full and complete capacity to contract, chooses in the exercise of her *1049 freedom to ratify it, and by such ratification endow with being a contract which, up to that time, had remained dormant, or never existed. Citing the maxim, “ ratione cess ante cessat lex,” the court treated the nullity in the contract as one arising from a relative nullity of “ capacity ” in the wife, and in so doing it was in accord with Fuzier-Herman under Art. 1108, O. N., citing Laurent, who says: “ L’incapacité purement civile d’une des parties, au contraire, peut rendre la convention annulable, mais non inexistante; ce dernier effet ne serait produit que s’il s’agissait d’une incapacité naturelle de consentir, se confondont avec l’absence deeonsentment.” Laurent, Vol. 15, n. 454. The same author, referring to the prescription of nullities which could be invoked under Art. 1304 of the Code Napoleon, which corresponds with our Art. 2221, says that prescription, when applicable, is based upon the theory and presumption of ratification or confirmation. Laurent, Vol. 19, b. 14.
We adhere to the principle announced in Lafitte vs. Delogny that a contract of this character is subject after the death of the husband to ratification or confirmation by the wife, and we think that this confirmation or ratification, may, under Art. 1786, C. 0., be either expressed or implied. If the contract has been executed, silence by the wife after the husband’s death during the prescriptive period, would be an implied ratification.
We do not think that the nullity of the contract was such as to' make it absolutely non-existent; it simply, during marriage, remained without effect. It was not of that character which “the law would always and constantly resist.” Art. 1L of the Oivil Oode says, that “ individuals can not, by their conventions, derogate from the face of laws made for the preservation of public order or good morals. But in all cases in which it is not expressly or impliedly forbidden, they can renounce what the law has established in their favor when the renunciation does not affect the rights of others, and is not contrary to the public good.”
We think the law relative to a wife’s not binding herself or her husband’s property was enacted specially in her interest and only remotely in that of the public. Primario spectat utilitatem privatem secondario publicam.
Art. 2305, O. O,, referring to payments made by parties says: “That which has been paid under a void title is also considered as. not due.” If the widow of John Brownson had, after his death, *1050 finding this note of hers executed during marriage still outstanding, gone forward and paid it, we do not think it would be contended that she would be entitled to the action in repetition which she would have had for a payment made by her in virtue or a title absolutely void.
The only attack made upon the sale in this case is the claim of the absolute failure of the basis upon which it rested the note and the mortgage. The proceedings themselves are not attacked. We think it was essentially necessary that the present action should have been brought in order to replace matters as they stood prior to the sale. The vice which attached to the original contract of mortgage was not absolute nor patent on the face of the record, but required, in order to bring it to light, proof of extrinsic facts. Mrs. Emma Brownson, the plaintiff, was a party to the act, and she could not ignore that fact — the fact that the contract had been executed years before through a judicial sale in enforcement of the mortgage, and the property was in the hands of a third possessor, claiming ownership. She could not bring a direct petitory action for the property, as she could have done, had her husband sold her property himself in order to pay his debt, or it had been sold in execution of a mortgage which he had placed upon it for that purpose. It was necessary that the sale at which Mrs. Caroline Brownson became the purchaser, should be set aside before Weeks, the subsequent purchaser of the same, could be reached, and to that end it was essential that Mrs. Caroline Brownson should have been made a party. Defendant is correct in saying that the present action is primarily an action of nullity or rescission, and that in so far as it is petitory, it is only consequentially so. Plaintiff went into the suit upon a contrary hypothesis, without proper parties and pleadings, at her own risk.
If the plea of prescription invoked by the defendant be sustained it will 'dispose finally of the case.
We endeavored to examine the record in the case of Mulford vs. Wimbush, 2 An. 443, to which counsel for plaintiff has referred us, with a view of ascertaining the character of the contracts involved therein, the precise circumstances under which it was brought, and the nature of the pleadings, but found that unfortunately it had been placed as among the “ missing records of the court.” It seems to be the only decision really bearing upon the question before us. Several others have incidentally referred to the prescriptions under Arts. *1051 2221 and 3542, but the remarks made do not seem to have been necessary for the purposes of the eases before the court, either because other and shorter prescriptions were pleaded which were determinative of the issues, or because the facts of the cases making the longer prescription (of ten years) applicable, it was important to refer specially to the shorter one of five. We have, in view of the importance of the question, examined it with care.
When the framers of our Oode reached the subject of the ex-tinguishment of obligations, they assigned “nullity and rescission” as one of the manners in which this was brought about. Among the articles making up that sub-title, they placed the present Art. 2221 (formerly Art. 2218), corresponding with Art. 1304 of the Code Napoleon. They were not dealing with the subject of “prescription” at that time; that was a subject thereafter to be taken up. They were uncertain what the final condition of the law on that subject would be, and in our opinion Art. 2221 was simply intended to reach cases which might escape from other provisions of the Oode. They however announced as a general rule that whatever might be the prescription fixed for cases wherein error, violence, or deception might be assigned as the causes for actions of rescission, and whatever might be that >or setting aside acts executed by persons interdicted, acts executed by married women not authorized, or minors, the starting point for prescription should be as announced in Art. 2221. If the court, in 2 An. 443, reached the conclusion that the prescription of Art. 2221 had to be adopted in that case in order to give the plaintiff the benefit of the period fixed therein for the commencement of prescription, for the reason that Art. 3542 was silent on that subject, we think the court erred. The second and third paragraphs of Art. 2221, though not repeated in Art. 3542, were none the less carried over into the latter article. We do not think that, in order to reach those particular provisions of the law, it was necessary that actions of nullity or rescission, based on fraud, error, violence, minority, interdiction of incapacity of women from want of authorization, should have been held to have been brought under the prescription of ten years. To do this would practically be to wipe out Art. 3542, which is as sweeping in its terms as it is possible to be in making five years the period for prescription for actions for the nullity or rescission of contracts. These particular causes are precisely those on which such *1052 actions are generally based. They furnish the foundation usually for setting aside what are known as voidable contracts.
In our opinion the prescription of ten years applies to a different class of cases. It reaches those where contracts, perfect and complete on the face of the act evidencing them, are attacked as absolutely null and void in order to have them so decreed through proof of extrinsic facts establishing the absence of one of the elements essential to the very existence of the contract, for instance, a contract ot sale or exchange where one of the things exchanged or the thing sold was found to have had no existence at the date of the contract. The State vs. Railroad, 34 An. 951, referred to by plaintiff, is an illustration of such a suit. In succession of Wilder, 22 An. 219, the prescription of five years was successfully pleaded against an attempt made to avoid after maturity a marriage contract made during minorty, the court holding that the contract was not void, but voidable.
In the case at bar, we think the evidence shows unquestionably that the plaintiff was in a position at one time to have repudiated the contract she made or to have undone the sale made under it. She permitted the mortgage to be foreclosed and the property to be judicially sold in its enforcement. She is not before us seeking to ward off an impending injury upon an unexecuted contract, but as a plaintiff seeking to undo, long after the rights of third parties have become involved, the harm which timely action on her part could have either avoided or minimized.
In Vaughan vs. Christine, 3 An. 330, this court, after citing Toullier as saying: “ En un mot nous ne connaissons point de nullite fondée sur l’interet privé qui ne puisse étre réparée par la ratification expresse ou tacite. Le vice le plus absolu des convention, le defaut ou la non-existence du consentement, put neanmoins etre réparépar la ratification, soit expresse, soit tacite,” declared that “in all executed contracts which, under this view of the law may be tacitly ratified, a presumption, juris et de jure of ratification, results from silence and inaction during the time fixed for prescription, and held that plaintiffs action was barred by the prescription of five years pleaded. No legal impediment has for six years stood in the way of Mrs. Emma Brownson bringing an action in nullity. She permitted the defendant to continue for years in the possession of the property, making valuable improvements and making outlays, *1053 many of which he could not now recover. The nullity which she invokes was a relative one in her own interest and subject to ratification. We think that law and equity unite in authorizing us to say that her long silence has resulted in barring an attack upon defendant’s title. Matters have gone too far to be now remedied. “ Multa fieri prohibentur quae si facta fuerent firmitatem.” We think the judgment appealed from is correct, and it is hereby affirmed.