## DARES v. O'DONNELL.
### No. 14550.

Court of Appeal of Louisiana. Orleans.

Jan. 2, 1934.

See, also, 147 So. 99, 710.

Wm. A. Tonglet and Jerome Meunier, both of New Orleans, for appellant.

Legier, McEnerny & Waguespack, of New Orleans, for appellee.

HIGGINS, Judge.

Mrs. Lydia Dares, divorced wife of Paul D. O'Donnell, brought this action against her former husband to recover the sum of $150, alleged to be due under the terms of an authentic act of partition, in which the community of acquets and gains was settled between them.

The defenses are, first that the purported act of partition is a nullity and should be rescinded because at the time it was executed by them the judgment of divorce had not been signed and, therefore, the parties were without capacity to bind themselves under the provisions of articles 1782 and 2446 of the Revised Civil Code, and, second, that the stipulation in the act of partition, under which the defendant obligated himself to pay the wife $100 per month during the remainder of her life or until such time as she might remarry, is not supported by a valid consideration, because the value of the property received by the wife in the settlement of the community of acquets and gains exceeded the value of the property received by the husband.

There was judgment in favor of plaintiff as prayed for, and the defendant has appealed.

Mrs. O'Donnell sued her husband for divorce. The suit was not contested by him and judgment was rendered in favor of the plaintiff granting the divorce on December 6, 1926, but, due to some unexplained circumstance, the judgment was not signed until July 28, 1927. In the meantime, on March 21, 1927, an authentic act of partition between the parties was executed. The act sets forth that the parties had been divorced by judgment of the civil district court on "November ———, 1926," and that the notary was directed to make a partition and settlement of the community of acquets and gains heretofore existing between the parties. In several places in the act it is expressly stated that the purpose of the partition was the settlement of the community between them and that each party reciprocally transferred to the other the respective pieces of property and assets specifically described and appraised in the act. There is also a provision in the document that, in addition to what the wife received in kind, she was to be paid by the husband "the sum of $100.00 per month during the natural life of the said Mrs. Lydia Dares O'Donnell, or until her remarriage." She has never remarried. Each party took possession of the respective properties and assets reciprocally conveyed to each other and the husband paid the $100 per

month up to January 15, 1932. The present suit was filed on March 3, 1932.

■■ Taking up the first defense we observe that at the time the act of partition was signed by the parties the judgment of divorce was not final because the judge had never signed the decree. Chartier v. Police Jury, 9 La. Ann. 42; Bird's Executors v. Bird, 23 La. Ann. 262; Marchal v. Hooker, 27 La. Ann. 454. The law is also clear that contracts between husband and wife, other than those specified in article 2446 of the Revised Civil Code, are null and void and the nullity may be invoked and pleaded by the spouses. Kelly v. Kelly, 131 La. 1025, 60 So. 671; Burns v. Thompson, 39 La. Ann. 378, 1 So. 913; Carroll v. Cockerham, 38 La. Ann. 813; Compton v. Sandford, 28 La. Ann. 237. Therefore it is plain that up to the time the judgment was signed, on July 28, 1927, the parties were lacking in legal capacity to bind themselves in the manner which they attempted to do, but that thereafter the legal impediment of incapacity was removed and the parties had the right to bind and obligate themselves as any other major. Consequently the parties had the right to subsequently ratify, approve, and confirm what they had attempted to do in the act of partition. This is particularly true, as the nullity due to incapacity was relative and not absolute, being malum prohibitum and not malum in se.

Did the parties either expressly or impliedly ratify the agreement? The evidence shows that both parties took possession of the property and assets which they received by virtue of the terms and provisions of the partition and exercised all the rights of ownership thereof. The husband has continuously carried out the stipulation with reference to the payment of $100 per month for several years after the judgment of divorce was signed, which removed the incapacity of the parties.

■■ In connection with his plea for the rescission and nullity of the act of partition, the defendant has neither offered to return nor tendered the property and assets which he received in the settling of the community of acquets and gains. The law does not permit a party to retain the benefits and advantages received under a commutative contract and at the same time seek the annulment and rescission thereof. To allow one to do this would be to give him the right to affirm that part of the contract which is beneficial and repudiate that part which is onerous. It is our opinion that the defendant, by his conduct, after the incapacity was removed by virtue of the signing of the judgment by the trial judge in the suit for divorce, has impliedly confirmed, approved, and ratified the act of partition. Maxwell v. Maxwell, 1 La. App. 413; Brownson v. Weeks et al., 47 La. Ann. 1042, 17 So. 489; R. C. C. art. 2272.

■ With reference to the defense of want of valid consideration, the act of partition shows the parties received the following:

Mrs. O'Donnell:

| | |
|---|---:|
| Contents of residence,....... | $ 2,500.00 |
| Studebaker automobile,..... | 2,000.00 |
| Aubrey Street real estate,.... | 7,500.00 |
| One ring,.................... | 500.00 |
| | $12,500.00 |

Mr. O'Donnell:

| | |
|---|---:|
| Contents of drug store,...... | $ 2,500.00 |
| Fixtures, .................. | 1,000.00 |
| Soda fountain,.............. | 1,000.00 |
| Tulane Avenue property,.... | 24,000.00 |
| | $28,500.00. |

Defendant proved that on December 31, 1926, he owed the homestead $17,416.90, secured by mortgage on the Tulane avenue property, and which he assumed in the settlement. This would give him, net, a total of $11,083.10. It was also shown that during March of 1927 the homestead made a loan to the defendant on the property on Tulane avenue to the extent of $25,800, the directors of the homestead appraising the property at $33,083. A witness for defendant, who qualified as a real estate expert, testified that the Tulane avenue property was worth $25,000 at the time of the settlement, and, on further questioning, said:

"Q. It has been testified that the property of Mr. O'Donnell was worth or was appraised at $33,000.00. As an expert would you have advised any of your clients at that particular time to pay such a price for that particular business?" (retail drug store operated by O'Donnell)

"A. I could hardly say. The appraisement might be colored by this. Mr. O'Donnell was using the property. It was a money-making concern, bringing a good revenue. I understand he was earning about $9,000.00 a year, between $5,000.00 and $10,000.00 I think, and that would give it an added valuation to him; and he was earning on the property and it was worth much more to him as a going concern."

The witness further stated that, while the property would be worth $25,000 to a third person, in his opinion it was worth between $8,000 and $10,000 more to Mr. O'Donnell, as he was operating a successful retail drug store in the premises.

We may add that there is evidence in the record tending to show that the actual value of the contents of the residence and the Studebaker automobile was $2,000 less than the appraisement contained in the act of partition.

We conclude, therefore, as did the trial judge, that the agreement between the par-

ties was supported by a good and valid consideration.

■ Finally, the defendant contends that the $100 per month paid by him really represented alimony and, as the defendant's circumstances have changed, the amount should be reduced. Plaintiff neither claimed, nor was awarded alimony. The partition, in a number of instances, expressly states that its purpose was the liquidation and settlement of the community of acquets and gains between the parties. Nothing is said impliedly or expressly about the $100 per month being considered alimony, or in the nature of alimony. In the case of Cupples v. Cupples, 173 La. 1055, 139 So. 478, 480, the wife secured a divorce from her husband and in the decree the husband was ordered to pay $150 a month alimony in settlement and satisfaction of the community theretofore existing between the parties. Several years later. the defendant ruled the plaintiff into court to show cause why the amount of the alimony should not be set aside, or the amount reduced, for the alleged reason that his ability to pay had been seriously impaired. The wife pleaded that the $150 a month was not alimony within the meaning of articles 148 and 160 of the Revised Civil Code, as amended, but a consideration for surrendering her community rights to her husband. In sustaining the wife's defense and dismissing the rule, the Supreme Court said:

"But it is clear enough that it was not intended that the husband should pay his wife 'alimony' in the true sense, nor was he ordered to do so. The pleadings and the judgment must be construed as a whole. While the allotment is referred to as 'alimony,' the amount was not to be paid 'out of the property and earnings of her husband,' as the Code provides, but 'in settlement and satisfaction of the community heretofore existing between said parties.' * * *

"The amount decreed to be due Mrs. Cupples by her husband does not fall within the provisions of either of these articles. She asked for no allowance during the pendency of the suit, nor did she thereafter ask to be paid said sum out of the property and earnings of her husband. The amount which she asked and which was granted her was in payment and settlement of her interest in the community property. * * *

"For this property right she was entitled to a consideration, which could have been paid in lump or globo. But for reasons which seem to have been satisfactory to both, it was agreed that, instead of a lump sum or globo settlement, Mrs. Cupples was to receive a stipulated sum each year, payable monthly, for her interest in the property. Such pay-

ments are not alimony in the sense that term is used in the Code."

The evidence convinces us that the stipulation for the $100 per month was not a payment of alimony to the wife, but a consideration in the settlement of her community rights.

For the reasons assigned, the judgment appealed from is affirmed.