**CURRIE v. MATSON et al.**

**No. 1.**

District Court, W. D. Louisiana, Shreveport Division.

June 4, 1940.

B. F. Roberts, of Shreveport, La., and W. D. Goff and J. R. Goff, both of Arcadia, La., for plaintiff.

E. W. & P. N. Browne, of Shreveport, La., for defendants.

PORTERIE, District Judge.

The Shreveport Pecan Orchard Company was incorporated on November 29, 1926. The incorporators were J. C. McCormick, President, G. R. Blasingame, Vice-President, and J. T. McCormick, Secretary-Treasurer, who constituted the Board of Directors.

Article 6 of the charter provided: "The number of the directors of this Corporation shall not be less than three, nor more than five."

G. R. Blasingame died April 21, 1929. Mrs. Oleta Ramage, the daughter of G. R. Blasingame, acquired stock in the corporation in 1930. She, later, as a stockholder, is to provoke the receivership of the corporation; it then follows that the instant suit is by the receiver as plaintiff. No director was ever elected to succeed G. R. Blasingame, and there were never any other directors, except the original three, two of whom are now deceased, and one of whom was deceased at the time the deed was executed which is the subject of attack in this case.

This suit by the receiver seeks to set aside a deed, dated April 29, 1931, of certain property belonging to the corporation. The deed was executed in the name of the corporation, by J. T. McCormick, Secretary-Treasurer and Special Agent, J. C. McCormick, President, and by J. T. McCormick and J. C. McCormick, individually,

and conveys real and personal property of the corporation to Edwin J. Forrest, trustee. It describes lands, aggregating 981 acres, more or less, in Natchitoches Parish, Louisiana, and recites further, as follows: "meaning and intending to convey, and does hereby convey to said Trustee all the lands of said Shreveport Pecan Orchard Company in said parish wherever located." The deed further conveys all the personal property and movable property on the lands; it says that J. T. McCormick acts under power of attorney and as special agent under a resolution of the Board of Directors, attached. This resolution states that there was held, on April 29, 1931, the date the deed was executed, a called meeting of the Board of Directors of the corporation, and that J. C. McCormick and J. T. McCormick, directors, were present and waived notice of the meeting. No notice of the called meeting of the board was given.

The resolution contains this statement: "Be it Resolved that J. T. McCormick be and he is hereby authorized to make and execute to Edwin J. Forrest a cash deed covering all the property belonging to the said corporation situated in Natchitoches Parish, Louisiana, containing all the property real and personal belonging to said corporation and to make and execute any and all deeds or conveyances necessary and proper to pass title to said property. The consideration of Five Thousand Dollars which has been previously received by the Corporation is and shall be the consideration of the said transfer. A copy of said deed is attached to this resolution to more particularly describe the property herein transferred and the form to be used by said deed."

The record shows that, just immediately prior to the execution of the deed, there had gathered at Shreveport, the home of the corporation, a number of out-of-state persons, who had subscribed money to the corporation for the purpose of drilling oil wells on the lands of the corporation. They were there pressing the officers of the corporation, the two McCormicks, for explanation of the expenditure of this money. The deed at issue and, also, another agreement by the McCormicks (of record), to pay for further deeper drilling of three wells, was the result of this meeting. More details of the meeting will be brought out as the opinion develops.

It is a matter of undisputed proof, by documentary evidence in the record, that the actual amount of property conveyed by the deed of April 29, 1931, is less than as recited therein (981 acres) by 443.5 acres. This was established by the itemized recital of deeds, made a part of the record, naming the Shreveport Pecan Orchard Company as the vendor throughout, and naming fourteen different vendees, with full description of lands conveyed in each case, and giving exact alienation recordation by book and page.

After Edwin J. Forrest had received the deed, he conveyed the land to his wife, Ella D. Forrest.

On November 17, 1937, Edwin J. Forrest and his wife, Ella D. Forrest, executed a quit-claim deed to the land described in the petition to Miss H. M. Matson, for a recited consideration of twenty-five dollars, and other good and valuable considerations. The deed, without warranty of title, was executed in the state of Kansas, and was not signed by the vendee, Miss Matson. Miss Matson testified that Mr. Forrest had written and asked her if she would look after the property for him on account of his ill health; that he was in very bad physical condition.

The plaintiff, the receiver of the corporation, has attacked the main deed, the one from the corporation to Forrest, on the ground that

First: The deed by the corporation is invalid because the resolution of authority therefor was by two directors when the charter provides the board of directors "shall be not less than three."

Second: (a) The deed was executed by the McCormicks, as officers of the corporation, under duress by Edwin J. Forrest, the vendee; and, alternatively,

(b) There was no consideration received by the corporation (although the deed recites a consideration of $5,000.)

Third: The sale amounted to a disposition of all of the property of the corporation, without authority of the stockholders.

First: The deed by the corporation is invalid because the resolution of authority therefor was by two directors when the charter provides the board of directors "shall be not less than three."

It is accepted mutually that the two McCormicks were qualified directors.

■ The applicable general rule, found in 19 C.J.S., Corporations, § 749, subd. b, p. 94, is in the following language: "The

fact that there are vacancies in the board does not prevent the remaining directors, if they constitute a quorum, from holding lawful meetings and transacting the company's business. The requisite quorum is a majority of the entire board, as it would be constituted if all the vacancies were filled, and not a majority of the board as it remains with the vacancies unfilled, * * *."

See, also, R.C.L., Vol. 7, p. 445.

American Jurisprudence, Vol. 13, p. 917, has:

"In the case of vacancies on the board the remaining directors may lawfully represent the corporation, for there is no principle requiring vacancies in the board to be filled before the remaining directors can act in the business of the corporation, provided, of course, the number left is sufficient to constitute a quorum.

"The basis upon which the validity of corporate action by the directors is determined is not the unanimous action of all directors, but that of a quorum, unless there are special provisions to the contrary or requiring a minimum number of directors to act."

The following cases uphold the above prevailing general principle: Dodge v. Kenwood Ice Co., 8 Cir., 204 F. 577; Pennington v. George W. Pennington Sons, 27 Cal.App. 57, 148 P. 947; Burton v. Lithic Mfg. Co., 73 Or. 605, 144 P. 1149; Chase v. Tuttle, 55 Conn. 455, 12 A. 874, 3 Am. St.Rep. 64; Albert E. Touchet, Inc., v. Touchet, 264 Mass. 499, 163 N.E. 184; Hotaling v. Hotaling, 193 Cal. 368, 224 P. 455, 56 A.L.R. 734; Mecleary v. John S. Mecleary, Inc., 13 Del.Ch. 329, 119 A. 557.

■ It is noteworthy that the two directors present at the meeting, voting unanimously, were a majority of the full board—a full board being three members.

An expression of the Louisiana law, Section 34, subd. III(d) of Act No. 250 of 1928, is interesting. The section reads: "A majority of the board of directors shall be necessary to constitute a quorum for the transaction of business, and the acts of a majority of the directors present at a meeting at which a quorum is present shall be the acts of the board of directors. * * *."

According to the prevailing view, therefore, and particularly because of the Louisiana provision quoted above, it is enough that a majority of the board acts favorably as to whatever subject matter is being considered, in case there are vacancies decreasing the membership of the board to less than that named in the statutes and articles of incorporation thereunder. We find, therefore, that the resolution of authority of the corporation, attached to the authentic act, is valid and legal.

■ Second: (a) The deed was executed by the McCormicks, as officers of the corporation, under duress by Edwin J. Forrest, the vendee;

Under this heading it is first necessary to decide whether or not there is fraud alleged in the petition. In Article V appear the phrases "made a pretended sale" and also "vendors pretended to act"; also, "but were without authority to execute said deed." In Article VI appears the language "Edwin J. Forrest, individually and as trustee, pretended to sell the said lands to his wife Ella D. Forrest." In Article VII appears "husband and wife respectively pretended to sell said lands to H. M. Matson"; and, finally, in Article VIII appears the language "said H. M. Matson pretends and claims to be owner of said lands."

The allegations in Article V of the petition are the important ones, as this case hinges entirely upon the validity of the deed from the Shreveport Pecan Orchard Company, Inc., to Edwin J. Forrest, trustee. The allegations of fraud as to the two subsequent deeds, contained in Articles VI, VII and VIII, are merely persuasive and, logically, are to depend as to substance and truthfulness in the same degree that there be substance and truthfulness in the allegations as to the main deed, set out in Article V. The court is of the opinion that the language used in the petition is sufficient to be an allegation of fraud under the Louisiana Code of Practice.

■ Moreover, we determine and rule that Ella D. Forrest and H. M. Matson, because of their close relation to Edwin J. Forrest, and being mere substitutes for him, do not become purchasers in good faith, third parties buying and relying on the alienation records and therefore free of equities such as fraud, want of consideration, etc., which may be pleaded against their vendor, Edwin J. Forrest. This plea is not advanced, anyway, by either Miss Matson, Mrs. Forrest, or Mr. Forrest.

■ Consequently, the court is permitted to look back of and beyond the terms of the deed. Oral and documentary evidence is

458

allowed to vary, alter, or contradict the written document.

■ As we now proceed with the analysis of the evidence in this case, we must remember, as fraud is alleged, the rule of decision is that mere preponderance of the evidence is not enough; "We take the general doctrine to be that when * * * it is proposed to set aside, to annul, or to correct a written instrument for fraud or mistake in the execution of the instrument itself, the testimony on which this is done must be clear, unequivocal, and convincing, and that it cannot be done upon a bare preponderance of evidence which leaves the issue in doubt." United States v. Maxwell Land-Grant Co., 121 U.S. 325, 7 S.Ct. 1015, 1029, 30 L.Ed. 949. "We think that fraud should be proven to that degree of certainty which warrants the conviction of a person who is charged with the commission of a crime, i. e., beyond a reasonable doubt." Belcher v. Booth, 164 La. 514, 114 So. 116, 118. See, also, Butler v. Austin, La.App., 150 So. 449, 450; Savoie v. Duplantis, La.App., 167 So. 127.

■ J. C. McCormick, the son, testified to threats made to him of criminal prosecution. We give little weight to the evidence of young McCormick, because he and his father, now deceased, had misspent the funds of the corporation. He feared more the condemnation of the numerous subscribers to the fund of $40,000 for drilling operations than he feared Mr. Forrest, who was claiming the commission fee due him of $5,000. The subscribers were present with an attorney. They had McCormick make the promises contained in the agreement of April 23, 1931. Although a criminal indictment was found against McCormick, it was not sought by Forrest and did not necessitate Forrest as a prosecuting witness at trial. A reading of the certified copy of the indictment filed with the district court of Sabine Parish does not involve Mr. Forrest in any way whatsoever and there is no evidence to indicate that Mr. Forrest could control or influence the prosecution. It is the court's belief that the threat of such prosecution did not influence McCormick in doing anything for Forrest. McCormick did for the subscribers what he should have done; the agreement of April 23, 1931, is merely an acknowledgment for their money, misspent by him and his father as officers of the corporation; again, the deed by the corporation of the lands to Forrest as trustee was nothing but the honest thing for the corporation to do—turn over the lands to the subscribers as a part reimbursement for their losses through the neglect of the officers of the corporation.

The defendant Edwin J. Forrest categorically denied using coercion or making threats of any kind or character. Donald E. Renne and Grant Renne, both of Kansas City, Missouri, W. H. Musick of Independence, Missouri, all three in Shreveport at the time of the execution of the deed at issue, in their out-of-state depositions, denied that in their presence or hearing, or to their knowledge, were there threats made, or even mention of prosecution, by Mr. Forrest. Their testimony is quite valuable on the point that Mr. Edwin J. Forrest was acting in their behalf as trustee; that the sale of the land to Forrest by the Shreveport Pecan Orchard Company was for the compensation of the amounts due by the corporation to the various out-of-state contributors, money for the exploitation of oil on the lands involved.

Mr. Frank Murphy, the notary who passed the instrument, said "There was no indication of coercion or duress of any nature at the time of the execution of the deed. Had there been such visible at the time, certainly I wouldn't have permitted the passing of the document."

Mr. Alex Sowers, whose testimony was taken by consent at Shreveport, out of court, developed that he was present at the time of the execution of the deed between the corporation and Mr. Forrest as trustee, and said that during the conference he had not heard Mr. Forrest make threats of any kind against either J. T. McCormick or J. C. McCormick. J. W. Cooper, another witness whose testimony was taken by deposition, in answering the question as to criminal prosecution against the McCormicks, said there was "none in my presence or that I heard since." Finally, Judge A. S. Drew, of Minden, reputable citizen and attorney of Webster Parish, whose testimony was taken by deposition also, testifies that he did not notice any coercion.

We find, therefore, that there were no improper threats or coercion, to make us hold the acts of either of the two McCormicks, as officers of the corporation, invalid and illegal.

■ Second: (b) There was no consideration received by the corporation (although the deed recites a consideration of $5,000).

As the court understands the situation existing at the time of the meeting of a number of people at the Buckhalt Hotel, Shreveport, Louisiana, the two McCormicks, particularly the son, had appropriated to their personal use and dissipated a considerable portion of the substantial sum of about $40,000, subscribed for the boring of three wells on the property of the Shreveport Pecan Orchard Company. These people, having taken the time to come here from Missouri and being dissatisfied with what had been done with their money, naturally were reproachful of the conduct of the McCormicks. It appears that Mr. Forrest, attorney and citizen of the Missouri area, had solicited the contributions made upon the promise by the corporation to pay to him a commission of twenty per cent. of the amount subscribed. These contributors of funds were partly satisfied by the McCormicks, acting for the corporation and passing title to four or five hundred acres of land, not nine hundred as described, to Mr. Forrest as trustee for all of them, the subscribers. This was a partial return to the contributors of their money, improperly spent by the corporation—for, after all, the McCormicks had not misspent the money of the contributors, as such, but the money of the corporation.

The court was much impressed with the evidence given in person by the defendant, Mr. Edwin J. Forrest. The fact that neighbors and fellow townsmen followed him in his own investment by their investment is proof of his trustworthiness, expressed by those who were in position to know him personally. The fact that he took the property as trustee for the benefit of all, when in truth it was due to him individually, is an expression of the responsibility he felt in having guided his friends and neighbors. He took the deed for the common benefit of all. There is on file in the case an itemized list of the names of the subscribers, with amounts subscribed opposite each name. The depositions made by the various subscribers show that they were aware of the commission of twenty per cent. due Mr. Forrest on $25,000 of the subscriptions; these depositions show that the subscribers were aware of the acreage at issue here being held in trust by Mr. Forrest for them. Even McCormick, in his deposition, admits and recognizes the amount being due by the corporation to Forrest, and, more, that drilling of wells with the money was for the benefit of the Shreveport Pecan Orchard Company. To the question "Is it a fact, Mr. McCormick, that the Shreveport Pecan Orchard Company during its drilling operations had no income except that which was received from those who had invested in the oil ventures of that company? In other words, you were not selling stock; you were not selling land; your only and sole income was represented by the amounts, aggregating around some forty thousand dollars, paid by these parties who were making investments for the purpose of drilling for oil which was paid over to the company?", he made the following answer: "That is the only method by which the company had of drilling these wells."

The court is of the view that the evidence preponderates heavily and proves a debt was due by the corporation to Forrest of $5,000. The debt became the consideration for the land.

■ Third: The sale amounted to a disposition of all of the property of the corporation, without authority of the stockholders.

An examination of the receivership proceedings in the matter of Mrs. Oleta Ramage, complainant, v. Shreveport Pecan Orchard Company, No. 774, in Equity, leads to the belief that the property sold herein was all the property left. There is no inventory as such filed, but in paragraph 6 of the complaint seeking the placing of the corporation in receivership, it is stated "that said land is the principal asset of the defendant corporation."

For the purpose of this opinion, we shall assume that the lands involved were the last asset.

An examination of the articles of incorporation does not evidence the necessity of a stockholders' meeting for disposition of the last assets. By authority of Section 41 of Act of No. 250 of 1928, the Corporation Act of Louisiana controlling at the time, a vote of two-thirds of the board of directors validates the deed at issue in this case. We have already shown that the organization of the board of directors was valid, and since the vote of authority was by two members out of three, there is compliance with the requirement of two-thirds. See Daly v. Opelousas Insurance Agency, 181 La. 89, 158 So. 631. This contention of plaintiff falls.

### The Pleas of Prescription By Defendant.

The facts having gone on all the points in favor of the defendant, legally and academically, pleas of prescription by the defendant need not be considered; there is nothing to cure by prescription. Nevertheless, discussion will be had on the pleas of prescription, as if all of the findings of fact and conclusions of law by us had been against the defendant. We proceed thus, because the appellate court may disagree with our findings of fact, and, then, the views of the trial court on the prescription pleaded may be desired.

The defendant pleads prescription alternatively, as follows:

(1) Prescription of five years, under Article 3542, for the nullity or rescission of contracts. This plea is directed against the main cause of action of the plaintiff: that the courts are not open now since seven years have elapsed since the date of the deed, April 29, 1931.

(2) The prescription of ninety days, as directed under Section 41, paragraph V, Act No. 250 of 1928.

(1) The defendant calls to his help the provisions of Article 3542 of the Civil Code of Louisiana, reading as follows:

"The following actions are prescribed by five years:

"That for the nullity or rescission of contracts, testaments or other acts.

"That for the reduction of excessive donations.

"That for the rescission of partitions and guarantee of the portions.

"This prescription only commences against minors after their majority."

The first weakness of the above article of the Louisiana Code is brought about by the reading of Article 2221 of the Civil Code of Louisiana, the pertinent paragraph being "In all cases, in which the action of nullity or of rescission of an agreement, is not limited to a shorter period by a particular law, that action may be brought within ten years." With exactly similar provisions, in the former the time is five years and in the latter the time is ten years.

Counsel for defendant has presented a well-outlined discussion, supported by jurisprudence, tending to show that Article 3542, with the shorter period of five years, is applicable in the instant case. The Supreme Court of Louisiana has compared the two articles exhaustively in the case of

Brownson v. Weeks, 47 La.Ann. 1042, 17 So. 489. This case directs the use of Article 3542 (five years) in certain cases involving the nullity or rescission of contracts.

Granting there was coercion in procuring the deed, we believe that to be a relative nullity, cured by the prescription of five years under Article 3542. See Brownson v. Weeks, supra; Savoie v. Duplantis, La. App., 167 So. 127.

On the point of want of consideration, however, we believe that to be an absolute nullity and not cured by the prescription of five years under Article 3542. See Brownson v. Weeks, supra. It may be cured only by the prescription of ten years, under Article 3544, for personal actions. George v. Lewis, 11 La.Ann. 654; George v. Knox, 23 La.Ann. 354; Latour v. Latour, 134 La. 342, 64 So. 133.

Therefore, defendant's plea of prescription under Article 3542 is good as to the coercive feature; but is not good under the point of want of consideration.

(2) The second type of prescription pleaded is best stated by the reading of Section 41, taken from the Corporation Act of Louisiana, Act No. 250 of 1928, paragraph V: "An action or suit to enjoin or set aside a conveyance by a corporation on the ground that the provision of this Act relating to the sale, lease, exchange or other disposition of all or substantially all of the assets of the corporation have not been complied with, shall be brought within ninety days after the corporate action purporting to authorize such disposition was taken, or the same shall be forever barred."

We think it clearly applicable and sustain it.

Plaintiff, in his brief, making a counter-defense to the plea of prescription of ninety days against the stockholder, urged by defendant, presents the court for consideration Article 1994 of the Civil Code of Louisiana, which says: "The action given by this section, is limited to one year; if brought by a creditor individually, to be counted from the time he has obtained judgment against the debtor; if brought by syndics or other representatives of the creditors collectively, to be counted from the day of their appointment."

The petition of the receiver for the Shreveport Pecan Orchard Company establishes no base whatever to plead the in-

validity of the deed of lands in this case because of it being a preference by an insolvent debtor of one creditor over an-other creditor. The essentials of the revocatory action, as known to Louisiana, are missing; therefore, Article 1994 is inapplicable. The petition states an action for the cancellation of a sale allegedly made under coercion or threats of criminal prosecution, and, alternatively, allegedly a nullity because of total want of consideration.

Judgment will be signed for the defendant, dismissing the case of plaintiff at its cost.