CULPEPPER, Judge.
Plaintiffs seek damages for an alleged assault and false arrest committed by the defendant. From a judgment rejecting their demands, plaintiffs appeal. The defendant answers the appeal, seeking expert witness fees of two doctors.
The substantial issue is whether the defendant Busby acted reasonably in carrying a shotgun when he approached and detained a group of teenagers,- whom he believed to be the persons who had been harassing him and his family and vandalizing his property.
In written reasons amply supported by the record, the trial judge states:
“Plaintiffs contend that on December 18, 1976, the children of Robert Hesse, Claire and James were assaulted and falsely imprisoned by defendant Benjamin Busby.
“James Hesse testified that he, his sister and three other teenage girls were riding around at approximately 10:30 p. m. in the residential neighborhood where defendant and his family lived.
“He said they rode past defendant’s home and noticed that it had been toilet papered. Claire, his sister, asked him if it was John Barber’s house. John Barber was a friend of James’. James then testified that they drove around the block and again passed the Busby home. He then stopped within a few feet of the Busby home because three of the girls had to urinate. Those three, *26 among whom was his sister Claire, disappeared into the darkness behind bushes while James and Karen remained seated in the vehicle. He testified that defendant Busby appeared on the scene in his automobile blocking the Hesse vehicle so that it could not be moved. Busby then, he says, pointed a shotgun at him and told him and Karen to get out of the automobile. He said that Busby yelled at them and told them that he knew that they had papered his house. The other girls hearing and seeing what was happening came back to the scene. They all denied their guilt as to the vandalism charged by Busby. James then suggested that they go to John Barber’s home around the corner to use the phone to call his parents and also to establish his identity through the Barber family. Busby accommodated James in his request. When they arrived at the Barber home, no one was there so they returned to the scene. Claire Hesse’s testimony is substantially the same as James. One of the girls in the group lived 2 to 3 minutes by car from the Busby home. Karen who was also involved in the incident testified they drove around the Busby block twice before stopping on the third time around. James Hesse at first denied having any knowledge of the existence of a green Ford automobile with a busted tail light owned by one of his passenger’s parents. When showed a photograph of a Ford automobile, James acknowledged that it did exist, was owned by the parents of one of his passengers but that they had never been permitted to use the vehicle. The significance of the examination was that Busby had seen such a vehicle circling around his home at night on previous occasions.
“Defendant, Busby, testified that for a period of 6 months prior to the incident, he and his family had been subjected to a persistent pattern of vandalism, toilet papering of his home, trashing of his yard, ringing of door bells and anonymous phone calls. He also testified that certain thieves of oil field equipment had been apprehended by authorities. The thefts had taken place at his Houma, Louisiana office. He indicated to the Court that he feared that he and his family’s lives were in jeopardy by other individuals whom he believed might have been part of the thievery ring.
“The Court having seen, heard and observed the testimony of the witnesses in Court makes the following observations.
“Five teenagers were riding around at a late hour of the evening and according to Karen had nothing to do. They insist they were looking at Christmas decorations. Woodbluff, the street upon which Busby lives, dead ends into Vermilion River and the exit out of the subdivision is in the opposite direction of the Busby home. James Hesse knew where John Barber lived, indeed he escorted Busby on foot to that residence which was around the corner and past the Busby home. Once he passed Busby’s home, he would then encounter Barber’s home. Why was it necessary then to make another complete circle around the block and then still yet a third when exit from the subdivision was in the opposite direction from defendant’s home? Then on the third trip around, three girls have a sudden call of nature at the same time and the place they elect to stop is just a few feet from defendant’s home. The three girls choose to urinate on an adjacent vacant lot to the Busby property instead of driving 2 to 3 minutes to one of the girls’ own home. There is no evidence that they ever did relieve themselves either then, while Busby went with Hesse or later at the police station where they reported the incident. There were lights on at the Meadows residence just across the street from the Busby home. Busby says he offered to take Hesse there • but that he refused. Hesse says he was not given an opportunity to go there. If Busby was willing to take Hesse to the Barber home, it doesn’t make sense that he would not have been willing to take him a lesser distance, just across the street.
“After this incident, Busby testified that he was never bothered with vandalism again.
“This Court has serious reservations about believing that those teenagers were not in fact responsible for the prior acts of *27 vandalism and harassment. Apparent disregard for others’ property was demonstrated in their own admission of trespass.
“It is not necessary however to make that determination in order to decide this case.
“Defendant Busby appeared to the Court to be a clean cut responsible businessman, husband and father. Both he and his wife testified that they lived in fear for six months. They could not understand who would do this to them or why. To be a prisoner in one’s own home when the sun goes down for fear is something that has never been sanctioned by the law of this State. The Court believes that Mr. Busby acted out of fear and frustration as a result of a persistent pattern of mental torment inflicted upon he and his family.
“Mr. Busby did not shoot anyone. Indeed Claire Hesse said she did not fear for herself. While Mr. Busby’s conduct might otherwise be considered tortious, under the facts and circumstances of this case, this Court cannot in good conscience hold him liable. To do so would quite simply be a miscarriage of justice.”
The applicable law is stated in Byrd v. Isgitt, 338 So.2d 374 (3rd Cir. 1976) as follows:
“[1,2] The general rule is that where a person reasonably believes he is threatened with bodily harm he may use whatever force appears to be reasonably necessary to protect himself. Each case depends on its own facts, such as the relative size, age and strength of the parties, their reputations for violence, the degree of physical harm reasonably feared and the presence or absence of weapons. Roberts v. American Employers Insurance Company, Boston, Mass., La.App., 221 So.2d 550 (3rd Cir. 1969).”
We do not find the trial judge was clearly wrong in accepting the testimony of the defendant and his wife over that of the teenagers. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Under defendant’s version of the facts, we find no manifest error in the trial judge’s finding that defendant acted reasonably.
In his answer to the appeal, defendant requests that the judgment of the district court be modified to award expert witness fees to Dr. James Blackburn and Dr. Robert Cole, and that the amount of these fees be fixed and assessed to the plaintiffs as costs of court. In his brief, defendant states these two experts testified at the trial in favor of defendant. However, the record before us does not contain the testimony of these physicians. There is a note by the court reporter (Tr. 159) that these two doctors testified, but the reporter was advised that it would not be necessary to transcribe their testimony. Furthermore, we find no stipulation in the record for the fixing of these fees.
There is no basis in the record before us on which we could fix the amount of the fees or assess them as costs. Accordingly, we reject the demand made in defendant’s answer to the appeal. However, we reserve to the defendant the right to seek these fees by rule filed in the trial court. See Ferguson v. H D E, Inc., 274 So.2d 783 (3rd Cir. 1973) and the authorities cited therein.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiffs.
AFFIRMED.