609 So.2d 998 (1992)
Donald V. ORGAN and Joan Bonvan Organ
v.
VALUE BUSINESS CENTER, INC., and William S. Lucky, a/k/a Bill Lucky.
No. 92-CA-616.
Court of Appeal of Louisiana, Fifth Circuit.
November 24, 1992.
*999 Bruce C. Butcher, New Orleans, for plaintiffs/appellants.
Richard J. Tomeny, Jr., Metairie, for defendants/ appellees.
Before GAUDIN, DUFRESNE and GOTHARD, JJ.
GOTHARD, Judge.
Plaintiffs, Joan and Donald Organ, filed this action seeking issuance of a writ of mandamus directing Value Business Center, Incorporated to cancel a stock certificate representing 200 shares of corporate stock owned by William Lucky, and to issue a new stock certificate in its stead to plaintiffs. The trial court denied petitioners request. We affirm.
On February 12, 1988 William Lucky, the registered owner of the disputed 200 shares of Value Business Center, Inc. stock, entered into an agreement with plaintiffs whereby he pledged the stock as security on a loan of $202,170.75. The loan is evidenced by two promissory notes in the amounts of $175,000.00 and $27,170.75 respectively. On that same day, Mr. Lucky executed a "stock power document" purporting to sell the stock. However, that portion of the document which provides for the appointment of an attorney to transfer the stock on the books of the corporation was not completed and the original stock certificates were never endorsed. Further, no request was made for a change of ownership on the corporate books.
In a separate action on August 27, 1991, the Organs filed suit on the $27,170.75 note[1] alleging that the note was not paid in accordance with the terms provided for in the note and requesting a judgment for monies owed and for recognition of the Organs' right to dispose of the pledged stock in accordance with the pledge agreement. However, that suit was subsequently dismissed without prejudice by the Organs. The $175,000.00 note was canceled through proceedings not pertinent to this review.
On October 11, 1991 Mr. Organ sent a demand letter to Mr. Lucky. In that letter Mr. Organ informed Mr. Lucky that $44,423.75 must be paid by 2:00 p.m. on October 18, 1991. It is unclear how Mr. Organ arrived at that figure since the record indicates that the only outstanding debt at that time was the $27,170.75 note. Mr. Organ was unable to explain his calculations at trial. Nonetheless, in that letter Mr. Organ stated, "(y)our failure to pay the notes will result in the creditors taking the pledged stock at private sale and exercising all ownership rights from that day forward."
On October 31, 1991 Mr. Organ hand delivered a letter to the corporation enclosing copies of the stock certificates and requesting new stock certificates be issued to him. When the corporation failed to honor his request, Mr. Organ filed this action for a writ of mandamus.
After a trial on the merits, the trial court rendered a judgment which denied plaintiffs' request for mandamus. The court found that Donald Organ had actual knowledge of the restrictions placed on the transfer of stock according to the bylaws of the corporation since he was one of the two *1000 original stockholders of the corporation as well as the original attorney for the corporation and its agent for service of process. The court also found that Donald Organ failed to follow the statutory requirements on the private sale of pledged stock and further that he failed to notify the new stockholders prior to the private sale in accordance with the Articles of Incorporation.
LSA-C.C.P. art. 3862, in part, provides that; "(a) writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice." Specifically, LSA-C.C.P. art. 3864 provides that; "(a) writ of mandamus may be directed to a corporation or an officer thereof to compel: (1) The holding of an election or the performance of other duties required by the corporate charter or bylaws or prescribed by law ..."
Mandamus is an extraordinary remedy which will only issue when there is a clear and specific right to be enforced or a duty which ought to be performed. It never issues in doubtful cases. Louisa Seafood v. Louisiana Wildlife, 546 So.2d 571 (La.App. 1 Cir.1989). In a mandamus proceeding a court can only order a corporate officer to perform his duties. A corporation has a duty only to issue a stock certificate in recognition of ownership of the stock. It has no duty or authority to make a determination of ownership in a mandamus proceeding. Pollock v. Pollock Engineering Co., Inc., 365 So.2d 1186 (La. App. 3 Cir.1978). Mandamus is a proper remedy to compel a corporation to transfer shares of stock on the corporate books and to issue a proper certificate to the owner where there is no real dispute as to ownership and where the transfer has been made in accordance with the conditions of the Articles of Incorporation Duhon v. Slickline, Inc., 449 So.2d 1147, 1151 (La.App. 3 Cir.1984), writ den. 452 So.2d 172 (La.1984).
The record in this case shows that William Lucky pledged 200 shares of Value Business Center, Inc. stock as security for two loans totaling $202,170.75 owed to Donald and Joan Organ. The record also shows that the Organs filed a petition for judgment on the note alleging non-payment. Mr. Organ testified that he voluntarily dismissed that action without prejudice before an answer was filed and decided to file this mandamus action because of delays he encountered.
Mr. Organ testified that the stock was "transferred" to him at the time the Act of Pledge was executed in 1988. He further testified that he did not go through a judicial process to assert his right as creditor to the stock pledged as security. In his testimony he also stated that he did not notify the shareholders of the corporation or the corporation itself of the pledge or of his intent to exercise his rights as holder of the stock in pledge prior to October 31, 1991.
In addition to the documents evidencing the loans and the pledge, a copy of the Articles of Incorporation of Value Business Center, Inc. was introduced into evidence. Article IX states:
A. No common stock in this corporation shall be transferred unless the stock shall have been first offered for sale to the corporation, and, if the corporation shall fail or refuse to accept the offer, to each of the other stockholders of this corporation. The offeree shall have an option to purchase the stock to be transferred on the following terms:
At the same price and on the same terms and conditions as the offeror shall have offered to a third person at arm's length, acting in good faith. The offer shall be in writing and shall set forth the price and terms on which the stock is offered. It shall be sent by registered mail to the President and Secretary of the corporation and to each stockholder at the address listed on the corporation books. The right to transfer stock shall not exist until the corporation and all existing stockholders either refuse in writing the offer so made, or waive the requirement of an offer in writing, or until they fail for a period of thirty (30) days after receipt of the written offer to accept it by compliance with the terms therein set forth. Regulations as to the *1001 formalities and procedures to be followed in effecting the transfer may be prescribed in the by-laws of the corporation.
B. Should the corporation be unable or unwilling for any reason to exercise its option as granted above, the option may be exercised by such stockholders as desire to exercise it, in the proportions in which these stockholders hold stock in the corporation.
C. After the expiration of the option period, no transfer at a price less than has been offered to the corporation and the other stockholders, or on terms or conditions varying from those stated in the letter notifying the corporation and the stockholders of a proposal to transfer, shall be valid until the right shall have been offered to the corporation and the stockholders to purchase the stock proposed to be transferred at the precise price and on the precise terms and conditions which were offered to or by the stockholder who proposes to transfer his stock.
D. The stockholders in the corporation may make agreements, either in by-laws or by a shareholder agreement between themselves relative to the purchase, among themselves, of the stock of this corporation in the event of the death, insanity, retirement or disability of any stockholder, or in the case of a corporate or partnership stockholder, insolvency or bankruptcy and in the event of the transfer of his stock by donation to the stockholder's spouse, linear descendants, or other transferee. A copy of any such agreement shall be filed with the Secretary of Secretary-Treasurer of this corporation, and in the provisions of any agreement shall be binding upon the persons who are parties to it and their respective heirs, administrators, legatees, executors and assigns.
E. Except as to a transfer on death or a gift of the stock of a stockholder to his spouse or linear descendants (which shall be controlled if at all by the by-laws or by a shareholder agreement), no sale, mortgage, pledge, conveyance, transfer, seizure, donation, sale under legal process or attachment, or by virtue of any pledge or hypothecation, and no other disposal of stock of any nature whatsoever shall have any effect as related to the corporation or its stockholders, nor shall it be valid in any fashion until the option period provided above shall have expired.
The articles were witnessed by Donald Organ and he is listed as the corporations agent for service of process.
Mr. Organ also testified that he and William Lucky were the only two shareholders at the time the pledge was made, and that he acted as an unpaid legal advisor to Mr. Lucky in the formation of the Corporation. Subsequently, stock in the corporation was sold to other parties but the corporation remains closely held.
Based on the evidence presented in this matter we believe the trial court was justified in its finding that Donald Organ had actual knowledge of the restrictions placed on the transfer of stock by the corporation. Further, by his own admission Donald Organ failed to notify the new stockholders before assuming ownership of the pledged stock.
The final finding of the trial court, that Donald Organ failed to follow the statutory requirements on the private sale of stock we believe is in error. The trial court's finding was based on the failure to provide twenty-one days notice to the debtor. Although it is not clear from the judgment and reasons, it appears that this ruling was made in accordance with LSA-R.S. 10:9-101 et seq. However, that law is inapplicable in this matter. Because the delivery of the stock in pledge occurred prior to the effective date of Chapter 9 of the Louisiana Commercial Laws[2] (R.S. 10:9-101 et seq.), Title XXof Pledge (C.C. art. 3133 et seq.) is applicable. See C.C. art. 3133.1. Accordingly, we apply C.C. art. 3165, which provides as follows:
The creditor cannot, in case of failure of payment, dispose of the pledge; but when there have been pledges of stock, bonds or other property, for the payment *1002 of any debt or obligation, it shall be necessary before such stocks, bonds or other property so pledged shall be sold for the payment of the debt, for which such pledge was made, that the holder of such pledge be compelled to obtain a judgment in the ordinary course of law, and the same formalities in all respects shall be observed in the sale of property so pledged as in ordinary cases; but in all pledges of movable property, or rights, or credits, stocks, bonds or other movable property, it shall be lawful for the pledger to authorize the sale or other disposition of the property pledged, in such manner as may be agreed upon by the parties without the intervention of courts of justice; provided, that all existing pledges shall remain in force and be subject to the provisions of this act.

The pledge agreement in this case provides in pertinent part:
In case of non-payment of the promissory note dated August 8, 1985, in the amount of $175,000.00 and/or the promissory note dated October 21, 1986, in the amount of $27,170.75, representing the said loans, promptly at maturity, or upon the death, suspension, failure, or insolvency, or upon any application for adjudication in bankruptcy, or upon the application of the said William S. Lucky for a respite, assignment or receivership, the said Joan Bonvan Organ and Donald V. Organ their heirs and assigns, shall have the right to sell, assign and effectively deliver the hereinabove described pledged stock certificate either at public or private sale, at the option of the said Joan Bonvan Organ and/or Donald V. Organ their heirs or assigns, without recourse to judicial proceedings and without either demand, appraisement, advertisement, or notice of any kind, all of which are expressly waived.
Such a provision, allowing the pledgee to sell the pledged stock extra-judicially at a private sale is permitted by art. 3165. First Metropolitan Bank v. Plaia, 384 So.2d 560 (La.App. 4 Cir.1980), on remand 389 So.2d 870 (La.App. 4 Cir.1980). Consequently, the pledgee was not compelled to provide the debtor with twenty-one days notice or to obtain a judgment in the ordinary course of law before proceeding with a private sale of the stock upon default of the pledgor's obligation.
Nonetheless, the sale and transfer of stock must be conducted in accordance with the restrictions applicable in the Articles of Incorporation of Value Business Center, Inc. Organ argues that compliance with the transfer restrictions should be waived in this matter because the pledgee and the pledgor were the only two shareholders at the time of the pledge. Further, since William Lucky was the president of the corporation his acquiescence in the transfer is binding on the corporation. Organ's theory depends on the proposition that the date of pledge, February 12, 1988 should be used as the effective date of transfer.
We believe the date of private sale after default on the obligation is the effective date of transfer. There is no testimony on when Organ actually sold the stock to himself. It appears that the event occurred some time between October 11, 1991 when Organ wrote a letter to Lucky stating that a private sale would take place and October 31, 1991 when Organ wrote to the corporation requesting issuance of new stock certificates. Under these circumstances we find that the transfer restrictions on the stock were not waived.
Consequently, a mandamus is inappropriate since the transfer was not made in accordance with the Articles of Incorporation. Duhon v. Slickline, Inc., supra. The judgment of the trial court denying plaintiffs' request for mandamus is affirmed.
AFFIRMED.
NOTES
[1] The suit actually asserts a principal amount of $29,616.12 but plaintiff acknowledges this amount is incorrect.
[2] January 1, 1990.