683 So.2d 894 (1996)
Rev. Arelious ROBINSON
v.
William DUNN, Sr., et al.
No. 96 CA 0341.
Court of Appeal of Louisiana, First Circuit.
November 8, 1996.
Writ Denied January 31, 1997.
*895 Johnnie A. Jones, Sr., Jones & Jones, Baton Rouge, for Plaintiff-Appellant Rev. Arelious Robinson.
W. Lee Overton, Lexlee Overton Johnson, Lee Overton, Baton Rouge, for Defendants-Appellees, William Dunn, Sr., et al.
Before CARTER, GONZALES and PARRO, JJ.
PARRO, Judge.
This is an appeal from an involuntary dismissal with prejudice of the plaintiff's claim for damages as a result of an alleged battery committed by the defendants. We affirm.

PLAINTIFF'S CLAIM
Plaintiff, Reverend Arelious Robinson ("Rev. Robinson"), claimed he was injured on July 17, 1993, in an altercation provoked by defendants, William Dunn, Sr. ("Mr. Dunn") and his five sons, Cleo, Lewis Edward, Jessie, Johnny, and Leo ("the Dunn brothers"), at the Union Baptist Church in Norwood, Louisiana. Rev. Robinson had been the pastor there since April 1990. Mr. Dunn was head deacon and two of his sons were also deacons. They apparently did not want Rev. Robinson to continue as pastor of Union Baptist Church. Rev. Robinson claimed that, shortly after he opened the Saturday church meeting on July 17, 1993, Mr. Dunn told his five sons to "Get him out of here." Rev. Robinson's petition to the court described what allegedly happened next, as follows:
At the command, "Get him out of here"! shouted by the defendant, WILLIAM DUNN, SR., to his five (5) sons who are named defendants herein, the tranquility [sic] of that Christian gathering was interrupted, disturbed, thrown into disorder; and the plaintiff, REVEREND ARELIOUS ROBINSON, the Pastor of Union Baptist Church, was pounced upon by the defendants, CLEO DUNN, LEWIS EDWARD DUNN, JESSIE DUNN, JOHNNY DUNN, and LEO DUNN (the five (5) sons of the defendant, WILLIAM DUNN, SR.), like a cat upon a mouse, who took seize of the plaintiff, pulled him down and out of the pulpit area of the Union Baptist Church; and forcefully removed him (the plaintiff) from the pulpit area of the Union Baptist Church while twisting his arms, clobbering and clinching him across the shoulders and at the back of the neck and base of the head, stretching his body and limbs as they pulled in an opposite direction, a tug-of-war game, in a manner as to tear him apart; and as they caught him up in the seat of his pants and booted him *896 out of the church-house door his head and chest contacted some parts of the door; and, thereby, caused him to sustain injury to his chest and head.
Rev. Robinson claimed these actions caused him physical injuries, pain and suffering, as well as embarrassment, humiliation, mental anguish, mental distress, and mockery of professionalism, entitling him to monetary damages.

TRIAL AND JUDGMENT
The plaintiff testified on his own behalf and presented the testimony of sixteen witnesses in support of his claims. At the close of the plaintiff's case, the defense moved for an involuntary dismissal on the grounds that Rev. Robinson had not proved the elements of his case by a preponderance of the evidence.[1] The court granted the motion, dismissing the plaintiff's case with prejudice.
The judge gave oral reasons for his ruling, which included the following findings of fact. The intent of the church members was for the minister at the Union Baptist Church to be hired for a period of one year. If the minister was not retained by a vote of the membership within that one year, the position became vacant. A meeting was held in April 1993 for the purpose of voting on whether or not to retain the minister, but the vote was not taken. Therefore, Rev. Robinson was no longer pastor of Union Baptist Church after that date. In July 1993, another church meeting was held. Although Rev. Robinson was not a church member, was no longer the pastor, had no right to be present at the meeting, and had been notified that he was not welcome, he attended the meeting. He was asked to leave the church, but did not do so. At that point, several of the Dunn brothers approached Rev. Robinson, took him by each arm, and tried to remove him from the church. He grasped the pulpit and they pulled him with sufficient force to disengage him from it, and then escorted him outside to the parking lot.
The court reasoned that, because Rev. Robinson had no right to be present on church property and had refused to leave, the church members had the right to use reasonable force to eject him from the premises. The judge found the extent of the force used to accomplish this purpose was reasonable and therefore, no tort was committed.

APPLICABLE LAW
LSA-C.C.P. art. 1672(B) provides the basis for an involuntary dismissal at the close of a plaintiff's case in an action tried by the court without a jury. In determining whether an involuntary dismissal should be granted, the appropriate standard is whether the plaintiff has presented sufficient evidence on his case-in-chief to establish his claim by a preponderance of the evidence. Hutzler v. Cole, 93-0486 (La.App. 1st Cir. 3/11/94), 633 So.2d 1319, 1323, writ denied, 94-0850 (La. 5/13/94), 637 So.2d 1070. Unlike the motion for a directed verdict in a jury case, the judge is free to evaluate the evidence and render a decision based upon a preponderance of the evidence, without any special inferences in favor of the party opposed to the motion. Super Fresh/Sav-A-Center, Inc. v. Ashy-Bickham Baker, 94-2548, p. 5 (La. App. 1st Cir. 5/5/95), 655 So.2d 531, 534, writ denied, 95-1864 (La. 11/3/95), 661 So.2d 1384. Proof by a preponderance of the evidence simply means that, taking the evidence as a whole, the evidence shows the fact or cause sought to be proved is more probable than not. McCurdy v. Ault, 94-1449, p. 5-6 (La. App. 1st Cir. 4/7/95), 654 So.2d 716, 720, writ denied, 95-1712 (La. 10/13/95), 661 So.2d 498.
A dismissal based on LSA-C.C.P. art. 1672(B) should not be reversed in the absence of manifest error. Shafer v. State, Dept. of Transp. & Dev., 590 So.2d 639, 642 (La.App. 3rd Cir.1991). The two-part test for the appellate review of facts is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). If a reasonable factual basis exists, an appellate court may set aside a trial court's factual *897 finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, Through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993).
A battery is harmful or offensive contact to another without that person's consent, done with an intent to cause the person to suffer such a contact. Caudle v. Betts, 512 So.2d 389, 391 (La.1987). In a civil battery case, the burden of proof is on the plaintiff to establish that a battery was committed. Poret v. Wilson, 612 So.2d 898, 900 (La.App. 4th Cir.1993). The law is well-settled that in actions for damages for battery, a plaintiff cannot recover if the evidence establishes he was at fault in provoking the difficulty in which he is injured, unless the person responding uses excessive force. Tripoli v. Gurry, 253 La. 473, 218 So.2d 563, 564 (1969); Robinson v. Hardy, 505 So.2d 767, 771 (La.App. 2nd Cir.), writ denied, 508 So.2d 825 (La.1987). Under Article 2315 the proper standard to evaluate a defendant's action is whether the conduct was that generally required of a reasonable man under like circumstances. See LSA-C.C. art. 2315; Thrasher v. Leggett, 373 So.2d 494, 497 (La. 1979); Hesse v. Busby, 379 So.2d 25 (La.App. 3rd Cir.1979), writ denied, 381 So.2d 1234 (La.1980).
This case is unusual, in that most of the reported civil battery cases involve persons injured while being ejected from bars because of drunk and disorderly conduct, or persons whose flagrantly aggressive and threatening behavior provoked a response which resulted in injuries. See, e.g., Thrasher v. Leggett, supra; Robinson v. Hardy, supra; Poret v. Wilson, supra; Bradford v. Pias, 525 So.2d 134 (La.App. 3rd Cir.1988). Our research failed to unearth any cases in which persons were forcibly ejected from a church. However, in every case the court must apply the legal precepts of general tort law related to the particular intentional tort alleged in order to determine whether the plaintiff has proved his cause of action and recoverable damages. Caudle v. Betts, 512 So.2d at 391. In this case, the trial court found Rev. Robinson had no right to be present at the church for the church election meeting. The intentional entry onto immovable property owned by another by a person who knows his entry is unauthorized or under circumstances where he reasonably should know his entry is unauthorized is a criminal trespass. LSA-R.S. 14:63. Although the wholesale immunities from civil responsibility resulting from the common law classification of a person as a trespasser are not recognized by our law, a knowingly unauthorized entry is legally and morally reprehensible conduct. See dissenting opinion in Entrevia v. Hood, 427 So.2d 1146, 1150 (La.1983); Cockerham v. Atlantic Richfield Co., 615 So.2d 547, 557 (La.App. 3rd Cir.), writ denied, 623 So.2d 1303 (La.1993).
Whether or not a battery was committed, whether the plaintiff provoked the encounter, and if so, whether the defendant used excessive force, are all questions of fact and the trial court's findings must therefore be reviewed under the manifest error standard. See Poret v. Wilson, 612 So.2d at 900.

ANALYSIS
Several of the witnesses called by plaintiff were not present during either of the church meetings and one had not been a church member for several years when the July 1993 incident occurred. Moreover, the testimony of plaintiff's witnesses who were at the meeting was inconsistent on almost every fact. The only matters upon which the witnesses agreed were: 1) although none of them could recall exactly what happened, something occurred during the April 1993 church meeting which resulted in police intervention and prevented the vote on the minister's status, and 2) the removal of Rev. Robinson from the church in July 1993 did not occur as described in his petition. However, despite the variations in the witnesses' descriptions, *898 there was some evidence supporting every factual finding made by the court.
Samuel Brown testified the church members elected Rev. Robinson for one year in April 1990. Although a formal contract was not signed, the intent of the church was evidenced by a written document adopted at that time. The tenure of the pastor was described in Section 4 of that document, which stated, "The pastor shall be elected for a period of one year." Aileen Wells and Andrea Brown confirmed the pastor was elected for a yearly term. Rev. Robinson himself stated he initially was elected for one year and there were annual elections at which his continuing status was decided.
Samuel Brown further stated because Rev. Robinson was not re-elected at the April 1993 meeting, his year had expired and he was no longer pastor of the church on July 17, 1993. He also testified the deacons met in May and agreed Rev. Robinson should not attend the July meeting because of the problem at the April meeting. Michael Brown confirmed the deacons had the authority to call a meeting for the purpose of electing the pastor. He and Hershey Mae Brown indicated the pastor traditionally was not present when the pastoral election was held.
Rev. Robinson testified he refused a certified letter sent to him, but he knew it told him not to come back to the church for the election meeting.[2] Hershey Mae Brown also indicated the deacons had told Rev. Robinson his time was up as pastor and he was not supposed to be at the election meeting. She testified the deacons were the "Head" of the church and as such, had the authority to make decisions for the church.
Rev. Robinson stated when he opened the meeting on July 17, 1993, Mr. Dunn told him he was not supposed to be there. Rev. Robinson did not leave, but began arguing with Mr. Dunn. All the witnesses who were present testified several of the Dunn brothers then went up to the pulpit and grabbed Rev. Robinson. Willie Wells and Edith Kilbourne testified that when Rev. Robinson hung on to the pulpit to resist them, the Dunn brothers pulled him loose from it and forcibly removed him from the church. Five witnesses agreed only two of the Dunn brothers actually touched Rev. Robinson; they each held him by one of his arms while escorting him toward the rear door. Two of the other brothers followed close behind, but Mr. Dunn and the other brother remained seated in the pew. The testimony was not clear concerning which of the five Dunn brothers were actually involved in removing Rev. Robinson from the church.
Other witnesses gave conflicting stories about the extent of force used by the Dunn brothers in removing Rev. Robinson from the church. However, the trial judge saw and heard the testimony. Accordingly, he was in the best position to evaluate the credibility and reliability of the witnesses. There was a reasonable factual basis in the record for every finding made by the trial court. Although there was conflict in the testimony on many of the facts, the trial court's choice between two permissible views of the evidence cannot be clearly wrong. The record in this case, viewed in its entirety, does not establish those factual findings were manifestly erroneous.
Based on these factual findings, we conclude the trial court did not err in determining Rev. Robinson provoked the incident and the degree of force used by the Dunn brothers to remove him from the church was reasonable. Most of the witnesses described a forced walk to the exit. Even this degree of force would not have been necessary if Rev. Robinson had stayed away from the meeting as he was asked to do, or if he had left when told he was not welcome to remain.[3] In light of the disturbance which had *899 occurred at the April church meeting, it was prudent for the deacons to ask Rev. Robinson to stay away from the July meeting. Rev. Robinson was a trespasser at this point and his intransigence provoked the incident. He made it clear, by his words and by holding onto the pulpit, that he would not leave unless physical force was exerted to remove him. His resistance, not the defendants' conduct, caused whatever minor injuries he might have sustained.[4]
Under these circumstances, the trial court did not err in concluding there was no liability on the part of the defendants. A battery is harmful or offensive contact to another without that person's consent, done with an intent to cause the person to suffer such a contact. Not every intentional, nonconsensual contact is a battery. To qualify as a battery, the contact must be the result of an intent to bring about a result which will invade the interests of another in a way that the law forbids. Caudle v. Betts, 512 So.2d at 391. The evidence shows the defendants did not intend offensive or harmful contact with Rev. Robinson when they made physical contact with him, nor did they intend to invade his interests in a way forbidden by law. They had a legal right to see that Rev. Robinson left the church election meeting so its business would not be impeded and disrupted by his presence. Their contact with him was a reasonable means of accomplishing that intention. When, with no intent to cause offensive or harmful contact, reasonable force is used by persons in authority against one who has provoked an incident, the resulting contact is not a battery. The trial court correctly applied the law to the facts.

CONCLUSION
For the above reasons, we affirm the judgment of the trial court which granted the defendants' motion for an involuntary dismissal of the plaintiff's suit, with prejudice.[5] All costs of this appeal are assessed against the plaintiff.
AFFIRMED.
NOTES
[1] The defendants actually moved for a directed verdict. A verdict is rendered only by a jury, so the technically correct designation for the defendants' motion in this case is a motion for involuntary dismissal, which is the designation we have used.
[2] Rev. Robinson's testimony concerning this letter was inconsistent; he later stated he did not know what it said.
[3] At oral argument, counsel for plaintiff argued that Rev. Robinson's status as pastor was irrelevant to the charge of battery, because even a "rank stranger" had a right to attend worship services at Union Baptist Church without being accosted. However, the record indicates the deacons had extensive authority. They surely had the right to ask even a "rank stranger" to leave the premises if his presence was likely to disrupt the business meeting of the church.
[4] Rev. Robinson described his injuries as chest bruises and strained muscles. The record contains documents showing he went to the emergency room for x-rays several hours after this incident. He did not seek any further medical treatment.
[5] Because we affirm the trial court's judgment finding no liability on the part of the defendants, we do not reach the plaintiff's second assignment of error concerning the court's refusal to admit evidence of lost wages as an item of damages.