bPARRO, J.
This appeal is one of three arising out of a single lawsuit filed by Gary W. Thornton, a minority shareholder in a closely-held corporation, Laneco Construction Systems, Inc. (Laneco). The lawsuit asserted direct and derivative claims against the majority shareholders, John W. Lanehart (John) and James Bradley Lanehart (Brad), who are officers and directors of Laneco, for actions they took after Thornton resigned as an officer and director of the company. This appeal is from a trial court judgment that dismissed various mandamus actions and the plaintiff’s request for appointment of a receiver for Laneco.[1] For the following reasons, we affirm.
FACTUAL AND PROCEDURAL HISTORY
In the mid-1980’s, the Laneharts owned a commercial painting company, Lanehart, Inc., which was subcontracted by Tudor Construction Company for work on the Jimmy Swaggart Ministries complex in Baton Rouge. Thornton was a project manager with Tudor. He encouraged the Laneharts to form a drywall company for work on the Swaggart project, and in August 1986, the Laneharts formed Laneco. In July 1987, Thornton left Tudor and became a stockholder, director, and president of Laneco. The *1121 capital investment of each of the three owners was $1000 for 333 shares of stock in the new corporation; each later received an additional 100 shares as a stock dividend.
Thornton retained his positions in Laneco and successfully managed the Baton Rouge operation for almost nine years. On March 19, 1996, he abruptly resigned as president over disagreements concerning whether the manager of the equally profitable New Orleans operation should be given the opportunity to purchase an ownership position in Laneco. Thornton continued to work for Laneco and remained a director until April 17, 1996, when he tendered his resignation from the board. He left the office and did no further work for Laneco after this date.
(^Before leaving Laneco, on April 10, 1996, Thornton incorporated a competing drywall company, Thornco, Inc. (Thornco). By May 16, 1996, Thornco was the successful bidder against Laneco for a major project; it has continued to be a direct competitor of Lane-co. However, Laneco has been, and continues to be, a very profitable company. Lane-co’s net profit before taxes for the fiscal year ending July 31, 1996, after payment of dividends and employee bonuses, was $792,645.
After Thornton terminated his employment and resigned from the board of Laneco, the Laneharts took over many of his responsibilities and promoted several other key employees to assist with the day-to-day operations. Brad was elected president of Laneco and John continued as secretary and financial officer. In a series of board meetings, at which the Laneharts were the only remaining directors, they approved certain actions challenged by Thornton in his lawsuit, including: (1) increasing their monthly salaries to almost double their previous amounts; (2) issuing and selling five shares of previously authorized, but unissued, shares of stock to Laneco’s attorney, R. Loren Kleinpeter, for $20 per share; (3) declaring employee bonuses at the end of the fiscal year, which inelud-ed $165,000 for Brad and $150,000 for John; and (4) authorizing payment of a dividend of only $5 per share on all outstanding shares.
Thornton’s lawsuit combined direct and derivative claims; Laneco and Kleinpeter were named as defendants, along with the Lane-harts. The petition alleged the actions taken by the Laneharts breached the fiduciary duties they owed the corporation and its minority shareholder, causing damage to La-neco and Thornton. As part of the derivative action on behalf of the corporation, Thornton’s lawsuit requested a writ of mandamus directing the Laneharts, as officers of Laneco, to return excess salaries and bonuses to the corporation and rescind the sale of stock to Kleinpeter.[2] Thornton also asked the court to remove Kleinpeter as attorney for the defendants and order him to return his five shares of stock to the corporation. Additional relief requested was ^appointment of a receiver to ensure that the corporation would be managed in a manner consistent with the interests of Laneco and its minority shareholder.[3] Thornton’s rule to show cause why this relief should not be granted was heard by the court on March 12, 1997. At the close of the plaintiffs case, the defendants moved for involuntary dismissal of all these claims, which was granted by the court.
The court’s written reasons for judgment state the matters before the court at the hearing involved four basic claims: (1) request for mandamus directing Kleinpeter to return his stock to the corporation; (2) request for mandamus to the Laneharts to return excessive bonuses and salaries and recall the stock issued to Kleinpeter; (3) request for appointment of a receiver; and (4) request to remove Kleinpeter as attorney for Laneco and the Laneharts in the litigation. On the first claim, the court found no authority for mandamus against Kleinpeter, because he was never an officer of the corporation.[4] On the second claim, the court noted that the Laneharts, as corporate officers, *1122 were subject to mandamus, but not for discretionary acts such as the compensation decisions. The court concluded the Laneharts’ actions as a two-person board were not void, simply because there should have been three directors. The court noted Thornton implicitly acquiesced in Laneco’s functioning with just two directors by nominating and voting for John and Brad as directors at the annual shareholders’ meeting following Thornton’s resignation. Under the circumstances, the Laneharts served as a “de facto” board. The court found the evidence showed Thornton had no preemptive rights to purchase the additional shares of stock that were issued and sold to Kleinpeter, and the issuance and sale were also discretionary acts not subject to mandamus. On the third claim, the court observed that the jurisprudence generally restricts appointment of a receiver to situations involving fraud or corporate insolvency, neither of which were present in this case. On the fourth claim, the court found no evidence to indicate Kleinpeter should be compelled to withdraw from representation of fcthe defendants, because there did not appear to be any conflict between his position and that of his clients.[5]
Thornton’s appeal submits the court erred in not granting mandamus relief ordering the Laneharts to rescind certain actions and return the assets involved to their former status, including the increases in their salaries, payment of their bonuses, and issuance and sale of five shares of stock to Kleinpeter. He also contends the court erred in not appointing a receiver or structuring some other in-junctive relief to protect Thornton’s and La-neco’s interests from continuing abuses.
APPLICABLE LAW

Involuntary Dismissal

In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence. LSA-C.C.P. art. 1672(B). In determining whether involuntary dismissal should be granted, the appropriate standard is whether the plaintiff has presented sufficient evidence on his case-in-chief to establish his claim by a preponderance of the evidence. Tyler v. Our Lady of the Lake Hospital, Inc., 96-1750 (La.App. 1st Cir.6/20/97), 696 So.2d 681, 684. The court is free to evaluate the evidence and render a decision based upon a preponderance of the evidence, without any special inferences in favor of the party opposed to the motion. Phillips v. Phillips, 95-2043 (La.App. 1st Cir.5/10/96), 673 So.2d 333, 334. Proof by a preponderance of the evidence simply means that, taking the evidence as a whole, the evidence shows the fact or cause sought to be proved is more probable than not. McCurdy v. Ault, 94-1449 (La.App. 1st Cir.4/7/95), 654 So.2d 716, 720, writ denied, 95-1712 (La.10/13/95), 661 So.2d 498. The trial court’s decision to grant a motion for involuntary dismissal should not be reversed in fethe absence of manifest error. Robinson v. Dunn, 96-0341 (La.App. 1st Cir.11/8/96), 683 So.2d 894, 896, writ denied, 96-2965 (La.1/31/97), 687 So.2d 410.

Writ of Mandamus

Mandamus is a summary proceeding, which is defined as a writ that may, among other things, be used against a corporation or an officer thereof to compel: (1) the holding of an election; (2) the performance of other duties required by the corporate charter or bylaws or prescribed by law; or (3) recognition of the rights of its members or shareholders. See LSA-C.C.P. arts. 3781, 3861, and 3864. It is an extraordinary remedy, which must be used by the court sparingly — only to compel action that is clearly provided by law, where it is the only available remedy, or where delay occasioned by the use of any other remedy would cause injustice. LSA-C.C.P. art. 3862; Acadian Ambulance Service, Inc. v. Parish of East Baton *1123 Rouge, 97-2119 (La.App. 1st Cir.11/6/98), 722 So.2d 317, 322. Mandamus may be used to compel the performance of corporate duties which are purely ministerial in nature, i.e., those duties which require no exercise of judgment or discretion, however slight, in their performance. Hebert v. Abbey Healthcare Group, Inc., 94-1280 (La.App. 3rd Cir.5/17/95), 657 So.2d 278, 280. Mandamus is to be used only when there is a clear and specific legal right to be enforced or a duty which ought to be performed. It never issues in doubtful eases. Organ v. Value Business Center, Inc., 609 So.2d 998, 1000 (La.App. 5th Cir.1992).

Board of Directors

Subject to the provisions of the articles of incorporation, the bylaws, or other provisions of Louisiana corporation law, all corporate powers shall be vested in, and the business and affairs of the corporation shall be managed by, a board of directors of not less than three natural persons, except that when all of the outstanding shares are held of record by fewer than three shareholders, there need be only as many directors as there are shareholders. LSA-R.S. 12:81 (A).[6] In the event of a vacancy on the board, [¡the remaining directors may, by majority vote, fill the vacancy for an unexpired term, provided that the shareholders shall have the right, at any special meeting called for the purpose prior to such action by the board, to fill the vacancy. LSA-R.S. 12:81(C)(3). A majority of the board of directors shall be necessary to constitute a quorum for the transaction of business, and the acts of a majority of the directors present at a meeting at which a quorum is present shall be the acts of the board of directors. LSA-R .S. 12:81(0(7). The fact that there are vacancies in a corporation’s board of directors does not prevent the remaining directors, if they constitute a majority of the entire board as it would be constituted if all vacancies were filled, from holding lawful meetings and transacting the corporation’s business. Cur-rie v. Matson, 33 F.Supp. 454, 457 (W.D.La. 1940).
Shares without par value may be issued from time to time for such consideration expressed in dollars as may be fixed by the board of directors. LSA-R.S. 12:52(A). Shareholders shall have only such preemptive rights as may be provided in the articles of incorporation. LSA-R.S. 12:72(A).

Receivership

The court may, after a trial, appoint a receiver to take charge of the corporation’s property when it appears, based on a proceeding instituted against the corporation by any shareholder, that the directors or officers are jeopardizing the rights of its shareholders: (1) by grossly mismanaging the business; (2) by committing gross and persistent ultra vires acts; (3) by wasting, misusing, or misapplying the assets; or (4) by allowing a majority of the shareholders to violate the rights of minority shareholders and endanger their interests. LSA-R.S. 12:151(A)(1) and (A)(5). The appointment of a receiver is not mandatory, but is subject to sound judicial discretion. Coleman v. La Salle Creosoting Co., 129 So.2d 311, 317 (La. App. 3rd Cir.1961). In determining whether or not the facts justify and make advisable a receivership, in the absence of a clear showing of fraud or breach of trust, the courts are slow to interfere, will order the appointment of a receiver only when it is manifest that it should be made, and are influenced by a consideration of whether such action would serve a useful kpurpose. Fincher v. Claiborne Butane Co., Inc., 349 So.2d 1014, 1016 (La.App. 2nd Cir.1977). The reviewing court will not disturb the ruling of the trial court in its refusal to appoint a receiver except in a case where it clearly appears that the interests of the minority stockholders are in imminent danger. Reiser v. Grand Isle, 221 La. 585, 594, 60 So.2d 1, 4 (1952).
ANALYSIS

Mandamus

The first assignment of error in this appeal addresses the court’s decision not to order a writ of mandamus directing the Laneharts to rescind certain actions taken by *1124 them after Thornton resigned from the board of Laneco, leaving only two directors. The actions challenged are the increases in the Laneharts’ salaries, the payment of their July 1996 bonuses, the issuance and sale of five shares of stock to Kleinpeter, and the declaration of involuntary forfeiture of Thornton’s vested interest in the deferred compensation agreement.[7] The argument is focused on the two-person board of directors. When Thornton joined the company in 1987, the Laneco bylaws were amended to require three persons on the board; this provision had not been changed when he resigned from the board in 1996. Additionally, Louisiana law governing corporations mandates a three-person board in any corporation, such as Laneco, having three or more shareholders. Thornton contends any actions taken by the Laneharts, acting as an illegal two-person board, are null and void and should be rescinded by means of a writ of mandamus directed to the Laneharts.
The trial court did not accept this argument, nor do we. When Thornton resigned, he and the Laneharts were the only shareholders. Laneco’s articles of incorporation require that directors be shareholders in the corporation. Accordingly, theJ>only person who could have been selected to fill the vacant position on the board was Thornton— who had created that very vacancy by his resignation. He could not be forced to serve in that position, especially in light of his obvious conflict of interest after Thornco became operational. To avoid paralysis or dissolution, neither of which would have been in the best interests of the corporation and its shareholders, the Laneharts had to continue making decisions for Laneco with only a two-person board. As noted by the trial court, Thornton implicitly recognized this when he nominated the Laneharts to serve as Lane-co’s directors in the annual shareholders’ meeting held after his resignation. While this action may not have ratified all of the specific decisions made by the Laneharts after his resignation, Thornton acquiesced in their continued functioning as a two-person board by making no mention of the discrepancy and nominating only the Laneharts for those positions. We note further that, even if Thornton had somehow been nominated and elected to the board, as a practical matter, the Laneharts, acting as a majority, could still have taken all of the same actions over his opposition.
The practical necessity for this result was judicially recognized in the case of Currie v. Matson, where the originally constituted board of directors consisted of three persons, as required by Louisiana law and the corporation’s bylaws. After the death of one of the directors, the surviving directors made certain decisions on behalf of the corporation, which were later challenged by the deceased director’s heir. The court examined the jurisprudence from other states and noted particularly the Louisiana provision allowing a majority of the board to constitute a quorum for the transaction of business, and allowing the acts of the majority of those present at a meeting at which a quorum is present to be the acts of the board. The court upheld the decisions of the two-person board, concluding:
According to the prevailing view, therefore, and particularly because of the Louisiana provision quoted above, it is enough that a majority of the board acts favorably as to whatever subject matter is being considered, in case there are vacancies decreasing the membership of the board to less than that named in the statutes and articles of incorporation thereunder.
Currie, 33 P.Supp. at 457.
holn support of its decision on Thornton’s claims, the trial court cited the case of Ogden *1125 v. Culpepper, 474 So.2d 1346 (La.App. 2nd Cir.1985), a case in which the corporate bylaws and Louisiana statutory law required a three-person board of directors, but only one person was serving on the board when certain decisions were made. The court there recognized the board was improperly constituted and the actions were taken without proper authority. However, these actions were not void, but voidable, and could be ratified by the shareholders. Such ratification could be implied by acquiescence. In the case before us, although Thornton argues that he clearly did not acquiesce in the specific actions taken by the Laneharts, he is only one shareholder. His opposition constitutes only one vote out of three. A majority of the shareholders acquiesced in the actions taken by the two-person board, and Thornton acquiesced in the way the board was constituted when these decisions were made. We agree with the trial court that the actions of the Laneharts were not void simply because they were acting as a two-person board of directors. Because the law does not clearly state that those actions are void and must be rescinded, they are not subject to mandamus.
We also agree with the court’s conclusion concerning the discretionary nature of the salary and bonus actions taken by the board, which place them beyond the purview of a writ of mandamus. Decisions concerning the compensation of officers and directors fall squarely within the powers granted to the board of directors. While such decisions may, under certain circumstances, be subject to some form of judicial scrutiny, these decisions are not appropriate for mandamus action.
Similarly, Louisiana statutory law specifically grants the board of directors the power to issue and sell stock in the corporation on such terms as it determines, within the limits specified by the corporate articles, bylaws, or other shareholder agreements. The board is not required to first offer such stock to existing shareholders, unless the articles of incorporation provide for preemptive rights. The trial court reviewed Laneco’s corporate documents and determined that Article XII of the articles of incorporation states only that restrictions against and regulation of the sale or transfer hi of stock may be provided for in the bylaws or separate shareholder agreements. Article IX of the bylaws states merely that stock may not be transferred unless it is first offered for sale to the corporation. A separate Stock Transfer Restriction Agreement states:
[E]ach of the shareholders hereby grants to the corporation and each of the other shareholders a right of first refusal to all shares ... held of record or beneficially owned by such shareholder_ (emphasis added).
Based on these provisions, the trial court concluded the only restrictions were on shares already issued by the corporation and owned by the shareholders, and did not limit the transfer of shares authorized, but not issued, by the corporation. The trial court also determined that the five shares of stock sold to Kleinpeter were shares previously authorized, but not issued, and thus the sale to him did not violate any of Thornton’s rights. We have reviewed the record, and find no error in the trial court’s factual findings or legal conclusions concerning the stock transfer. The trial court correctly dismissed Thornton’s request for a writ of mandamus directing the Laneharts to recall the stock sold to Kleinpeter.

Receivership

Thornton’s petition originally requested appointment of a receiver to manage Laneco pursuant to the terms and provisions of LSA-R.S. 12:151, et seq. At the hearing, this request was amended to having a receiver appointed only to serve as a one-person board of directors to oversee management of the corporation’s capital assets, leaving the day-to-day operations in the hands of the Laneharts. Thornton alleges a receiver is necessary to protect his interests by preventing the Laneharts from misusing corporate assets for their own benefit and failing to distribute profits in a fair and equitable manner.
It is clear from our review of the Louisiana jurisprudence that appointment of a receiver is a very drastic remedy and is used only in exceptional circumstances. The evidence at *1126 the hearing, including the testimony of Thornton and his witnesses, demonstrates that Laneco continues to be very well managed and highly profitable under the Lane-harts’ direction.' Additionally, with reference to the compensation and dividend payments, the current practices do not differ in any significant respect from hthe way the corporation was managed while Thornton was assisting in those decisions as an employee, director, and officer. A review of the salaries and bonuses historically paid by Laneco shows that, while Thornton was a full time employee, his total compensation exceeded that of the Laneharts, who only devoted part of their time to this company. During his tenure, Thornton’s total income from Laneco was $1,448,532, while John’s for the same period was $1,190,903 and Brad’s was $1,218,637. During Laneco’s most profitable years, 1989 and 1991, Thornton’s bonuses were $257,900 and $230,000, respectively. The evidence also shows that in profitable years, even after payment of salaries, bonuses, and dividends, the corporation always maintained a substantial cash position in order to fund its projects without having to borrow for that purpose.
Thornton admitted that he approved of these compensation arrangements and other financial decisions while he was participating as an officer and director of Laneco, stating:
[I]n the previous years when all three of us was equal partners, we disbursed profits through those vehicles which was salary, bonuses, director fees, and dividends. .. .And it was fair and all three of us agreed to it. The problem exists when I left, it then became unfair. Because when it was fair was I had salary, bonuses, director’s fees, and dividends.... What happens was that when I left the last year, it ceased to be equal.
However, Thornton voluntarily terminated his positions with Laneco, thereby forfeiting his right to receive salary, employee bonuses, and director’s fees. From this point on, it was inevitable that his share of the corporation’s profits would be unequal. And although Thornton would like to characterize the bonuses as constructive dividends, the evidence shows Laneco historically rewarded other key employees with bonuses during profitable years, including 1996. Bonuses were not restricted to shareholders and were not paid in amounts corresponding to percentages of ownership. In a recent case involving a similar distribution of bonuses, this court found that, when the evidence showed that other employees who were not stockholders also received bonuses, and the distributions did not reflect ownership percentages, such bonuses were not ^^constructive dividends. See Averette v. Industrial Concepts, Inc., 95-1286 (La.App. 1st Cir.4/30/96), 673 So.2d 642, 646, writ denied, 96-1510 (La.9/20/96), 679 So.2d 442.
Based on the evidence presented, we do not find the trial court abused its discretion when it denied Thornton’s request for appointment of a receiver. The actions of which Thornton complains simply do not rise to the level of mismanagement, wasting or misuse of assets, or gross and persistent ultra vires acts. Also, although Thornton is dissatisfied with the actions taken by the Laneharts, their decisions have not violated his rights or endangered his interests, such that appointment of a receiver would be justified under the authorizing statutes.
CONCLUSION
Although Thornton argued forcefully that the Laneharts breached fiduciary duties owed to the corporation and to him, the procedural mechanism by which these claims were brought to the trial court was by a rule to show cause why mandamus and receivership should not be granted. These are both extraordinary remedies. Accordingly, the only issue before the trial court was whether the evidence presented was sufficient to satisfy the statutory and jurisprudential requirements for such actions. We conclude the trial court was correct in determining Thornton had not established his right to such relief by a preponderance of the evidence, and in dismissing these claims.
We affirm the judgment of the trial court granting the ..defendants’ motion to dismiss and denying the plaintiffs requests for writs of mandamus and appointment of a receiver. *1127 All costs of this appeal are assessed against the plaintiff.
AFFIRMED.

. The judgment dismissing the mandamus proceeding was signed April 4, 1997. Thornton filed an application for supervisory writs with this court, which was denied on the basis that the judgment granting the motion to dismiss the summary proceeding and denying the rule for mandamus was final and appealable. On May 15, 1997, in an unpublished action on the writ, this court remanded the case to the trial court with instructions to grant the relator an appeal.

.The petition also asked the court to order payment of additional dividends. This request was dropped from the mandamus action, but was adjudicated later, along with the remaining direct and derivative claims.

. Other claims in this lawsuit were separately adjudicated and are the subject of two related appeals decided this day in docket numbers 97 CA 2870 and 97 CA 2871.

. This ruling was not appealed.

. This ruling also was not appealed.

. This statute was amended by 1997 La. Acts No. 914, § 1, to allow the board of directors to consist of “not less than one natural person,” regardless of the number of shareholders.

. Evidence was presented concerning the deferred compensation agreement and the board's decision to declare Thornton’s participation in it forfeited under the terms of the contract, but the court’s judgment on the mandamus actions did not address this claim. Additional evidence concerning this claim was presented to the court in a later hearing, at which this claim was adjudicated. Accordingly, although it was mentioned in the assignment of error, we pretermit discussion of this claim in this appeal and address it, along with the other claims tried by the court in that later hearing, in our decision on the appeal under docket number 97 CA 2871. We note, however, that enforcement of contractual obligations is never a proper subject for mandamus action, because other legal remedies are available to enforce such claims. Hebert, 657 So.2d at 280.