42 So.3d 439 (2010)
Iris Hopkins TATE
v.
Pauline A. TATE.
No. 2009 CA 2034.
Court of Appeal of Louisiana, First Circuit.
June 11, 2010.
Rehearing Denied July 26, 2010.
*441 Patricia H. Oster, Hammond, Louisiana, for Plaintiff/Appellant, Iris Hopkins Tate.
Erik L. Burns, Thomas N. Thompson, Denham Springs, Louisiana, for Defendant/Appellee, Pauline A. Tate.
Before DOWNING, GAIDRY, and McCLENDON, JJ.
GAIDRY, J.
In this case, the plaintiff appeals a trial court judgment dismissing her petition to rescind the sale of immovable property to defendant for failure to pay. We affirm.

FACTS AND PROCEDURAL HISTORY
On February 15, 2001, Iris Hopkins Tate executed an act of cash sale whereby she sold a tract of land containing her house and an apartment to her daughter, Pauline Tate, for $70,000.00. On the same date and before the same notary and witnesses, Iris and Pauline executed a counterletter declaring that although the parties had executed an act of cash sale, "in fact no sum was paid to [Iris] and further it was and is agreed between [Pauline] and [Iris] that [Iris] may reside on the subject property as long as she so desires...." Although the act of sale was recorded in the conveyance records, the counterletter was not.
On June 24, 2004, Pauline[1] donated the property to her daughters, Lisa Juban Duvall and Susan Michelle J. Lozier. This donation was recorded in the conveyance records on July 2, 2004 and makes no mention of Iris's right of habitation.
On July 6, 2004, Iris filed a petition to rescind the February 15, 2001 sale to Pauline, alleging that Pauline never paid anything for the land. The petition also alleged that Lisa had threatened to use her mandate to act for Pauline to transfer the property to "other unnamed individuals." Consequently, Iris sought a restraining order to prevent the sale or transfer of the property or her removal from the property. Finally, Iris sought lost rental income from Pauline for the time period that Pauline lived in the apartment on the property rent-free. The trial court issued a temporary restraining order on July 28, 2004, prohibiting Pauline, her heirs, assigns or attorneys or anyone acting on their behalf from removing Iris from the property or from selling, transferring, or otherwise alienating the property.
On August 5, 2004, Susan donated all of her interest in the property to Lisa, and on August 6, 2004, Lisa transferred her ownership interest in the property into a limited liability company called Justification, L.L.C. Lisa was the sole member of Justification, L.L.C.
Justification, L.L.C. subsequently intervened in the suit filed by Iris. The intervention alleged that the act of cash sale executed by Iris and Pauline was actually a disguised donation, as evidenced by the counterletter, and no money was owed. *442 Justification, L.L.C. sought a declaratory judgment recognizing it as the rightful owner of the property at issue and also filed a cross claim against Iris for damages resulting from her permitting her grandson to live in the apartment on the property.
The trial court rendered judgment on April 7, 2008 decreeing that, pending resolution of the other matters, Lisa had the discretion to use the apartment as she chose, and anyone occupying the apartment was ordered to vacate by April 15, 2008.
The matter proceeded to bench trial, and at the close of Iris's case, the court granted Pauline's motion for directed verdict, finding that Iris had not carried her burden of proof to rescind the sale, and dismissed Iris's claims against Pauline. This appeal followed.

DISCUSSION
Initially we note that although Pauline moved for a directed verdict and the court stated that it was granting a directed verdict pursuant to La. C.C.P. art. 1810, a directed verdict is only appropriate in a jury trial. Louisiana Code of Civil Procedure article 1672(B) provides the basis for an involuntary dismissal at the close of a plaintiffs case in an action tried by the court without a jury. Nevertheless, that error is one of form rather than substance, as the ultimate object of both motions is the same. Gillmer v. Parish Sterling Stuckey, 09-0901 p.3 (La.App. 1 Cir. 12/23/09), 30 So.3d 782, 785.
In determining whether involuntary dismissal should be granted, the appropriate standard is whether the plaintiff has presented sufficient evidence on his case-in-chief to establish his claim by a preponderance of the evidence. Robinson v. Dunn, 96-0341 p. 4 (La.App. 1 Cir. 11/8/96), 683 So.2d 894, 896, writ denied, 96-2965 (La.1/31/97), 687 So.2d 410. Proof by a preponderance simply means that, taking the evidence as a whole, the evidence shows the existence of the fact or cause sought to be proved is more probable than not. McCurdy v. Ault, 94-1449 pp. 5-6 (La.App. 1 Cir. 4/7/95), 654 So.2d 716, 720, writ denied, 95-1712 (La.10/13/95), 661 So.2d 498.
An involuntary dismissal should not be reversed by an appellate court in the absence of manifest error. Robinson, 96-0341 at p. 4, 683 So.2d at 896. Accordingly, in order to reverse the trial court's grant of involuntary dismissal, we must find, after reviewing the record, that there is no factual basis for its finding or that the finding is clearly wrong or manifestly erroneous. See Stobart v. State, through Dep't of Transp. and Dev., 617 So.2d 880, 882 (La.1993). The issue is not whether the trial court was right or wrong, but whether its conclusion was reasonable. Id.
A contract is a simulation when, by mutual agreement, it does not express the true intent of the parties. La. C.C. art. 2025. When the parties enter into a contract, but intend for that contract to produce no effects between them, the contract is an absolute simulation and has no effects between them. La. C.C. art. 2026. Where the parties intend that their contract shall produce effects, although different from those effects recited in their contract, the contract is a relative simulation. A relative simulation will produce the effects intended by the parties if all requirements for those effects have been satisfied. La. C.C. art. 2027.
It is clear from the counterletter executed by the parties that they did not intend for the transaction between them to be a sale, but rather a donation. Thus, the contract was a relative simulation, and as such, will only constitute a valid donation if *443 all the requirements for a donation have been satisfied.
At the time the act of cash sale and counterletter were executed in this matter, the Civil Code contained the following form requirements for inter vivos donations: Inter vivos donations of immovable property must be made by authentic act,[2] must contain a detailed description of the property given,[3] and must be accepted by the donee in precise terms.[4]
The "precise terms" requirement of article 1540 obligates a donee to use express, formal, and unconditional language in his acceptance; in other words, an explicit acceptance is required. In re Succession of Jones, 43,365 p. 2 (La.App. 2 Cir. 6/4/08); 986 So.2d 809, 810, writ denied, 08-2023 (La.12/12/08), 996 So.2d 1117. Although there are no ritual words required, there must be some explicit language to signify acceptance. A signature alone cannot be construed as an acceptance, and acceptance cannot be inferred from the circumstances. Id., 43,365 at p. 3, 986 So.2d at 811.
Neither of the two documents executed by Iris and Pauline contains language which would suffice as an acceptance of a donation, and Pauline's signature alone on the two documents is insufficient to constitute acceptance. As such, there was no valid donation of the property from Iris to Pauline.
Nevertheless, unrecorded counterletters can have no effect against third parties. La. R.S. 9:2721(A).[5] Even a third party with actual knowledge of a counterletter is not deprived of the protections of the public records doctrine when the counterletter is unrecorded. La. C.C. art. 2028, Revision Comments1984 (d). Accordingly, Justification, L.L.C., the record owner of the property, is protected in its ownership by the failure of the parties to record the counterletter.
Iris argues on appeal that the donation of the property from Pauline to Lisa and Susan was invalid because Lisa's action as mandatary in donating the principal's property to herself and her sister was prohibited by La. C.C. art. 2998, which provides:
A mandatary who represents the principal as the other contracting party may not contract with himself unless he is authorized by the principal, or, in making such contract, he is merely fulfilling a duty to the principal.
Iris asserts that Lisa's mandate contained no authority to donate her mother's property to herself. However, this issue was not raised by Iris at trial, and there is no evidence in the record regarding the authority conferred upon Lisa by the mandate. Thus, we cannot consider this argument on appeal.
Iris's final argument on appeal is that the court erred in holding that she still had a valid usufruct on the property since the document granting the right was not recorded. In ruling on the matter *444 at the close of Iris's case, the trial judge stated:
The plaintiff wished to retain usufruct of the property. And it's undisputed that she has. She still resides on the property.
However, the judgment rendered by the court said nothing about Iris's usufruct.[6] It simply stated:
[T]he Motion for Directed Verdict in favor of defendant, Pauline A. Tate, made pursuant to La. C.C.P. Art. 1810 is hereby granted, the court finding that the plaintiff has not carried her burden of proof to rescind the sale and therefore the plaintiffs demands are dismissed at her sole cost.
A trial court's reasons for judgment are not part of the judgment. It is the judgment itself that is controlling, not the reasons for judgment. Rupert v. Swinford, 95-0395 (La.App. 1 Cir. 10/6/95); 671 So.2d 502. Thus, this argument is moot since the court did not address the issue in its judgment.

CONCLUSION
For the reasons set forth hereinabove, we affirm the trial court judgment granting an involuntary dismissal of plaintiffs claims. Costs of this appeal are assessed to plaintiff, Iris Hopkins Tate.
AFFIRMED.
DOWNING and McCLENDON, JJ., concur and assign reasons.
DOWNING, J., concurs and assigns reasons.
While the result reached by the majority seems to be legally correct, I observe that neither the trial court nor we ruled on any claims for breach of contract between the parties.
McCLENDON, J., concurs and assigns reasons.
While the result in this matter seems harsh, I believe that the opinion is legally correct.
NOTES
[1] The Act of Donation was executed on behalf of Pauline by her daughter Lisa Juban Duvall pursuant to a purported mandate.
[2] La. C.C. art. 1536.
[3] La. C.C. art. 1538.
[4] La. C.C. art. 1540.
[5] La. R.S. 9:2721(A) provided, at the time of execution of the counterletter herein:

No ... counter letter ... relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated. Neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties.
La. R.S. 9:2721(A) was repealed by Acts 2005, No. 169, § 8, effective July 1, 2006.
[6] Although immaterial to our disposition of this matter, we note that the counterletter reserved a right of habitation to Iris, not a usufruct. See La. C.C. arts. 630-638.